AMERICAN CAN CO. v. WILLIAMS.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 131.

1. BANKS AND BANKING (§ 166*)—COLLECTION OF DRAFTS—BANK'S RELATION TO OWNER.

Where sight drafts attached to bills of lading were delivered to a bank for collection and remission of proceeds, the relation of trustee and cestui que trust was established between the bank and the owner of such proceeds, which might be followed, on the bank's insolvency, into the hands of its receiver, if they could be traced.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578, 586; Dec. Dig. § 166.*]

2. BANKS AND BANKING (§ 166*)—TRACING TRUST FUNDS—PROCEEDS OF BANK DRAFTS.

Plaintiff sent certain drafts attached to bills of lading to a bank for collection and remission of proceeds. Some of the drafts were paid to the bank by the drawees' checks on outside banks made payable to the collecting bank and subsequently paid to it or after its insolvency to defendant as receiver. Others were paid by the drawees out of their own accounts as depositories of the collecting bank, the amounts being charged against such accounts, and still others were paid by the drawees' checks on outside banks payable to the collecting bank and indorsed and delivered by it to its New York City correspondent and credited by the lat-

ter to the collecting bank. It was admitted that the "assets" of the collecting bank which came into defendant's hands as receiver exceeded an amount of plaintiff's claim, but it was not shown that the money represented the proceeds of any of the drafts, except those paid to the receiver and a small balance of the proceeds of a check on an outside bank with which one of the drafts was paid, which check was credited to the collecting bank in its account with the drawee of the check. *Held*, that claimant had only succeeded in tracing so much of the proceeds of the drafts as represented the amount so paid to the receiver, as to which only it was only entitled to preferred claim.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 166.*]

3. RECEIVERS (§ 76*)—TRUST FUNDS—MISAPPROPRIATION.

The right to follow misappropriated moneys into the hands of a receiver only exists where there is some identity of the property followed with the trust funds.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 137; Dec. Dig. § 76.*]

In Error to the Circuit Court of the United States for the Western District of New York.

Action by the American Can Company against Christopher L. Williams, as receiver of the Fredonia National Bank. Judgment for plaintiff for less than the relief demanded (176 Fed. 816), and plaintiff brings error. Affirmed.

The plaintiff is a manufacturing corporation organized under the laws of the state of New Jersey and doing business in the state of New York and elsewhere.

The defendant is the receiver, appointed by the Comptroller of the Currency, of the Fredonia National Bank, which, prior to June 19, 1905, carried on business in Fredonia, N. Y.

Between May 17, 1905, and June 14, 1905, the plaintiff forwarded to said bank for collection certain sight drafts on two local corporations aggregating $28,929.32, and having attached thereto bills of lading for shipments made by the plaintiff to such corporations. Said bank collected said drafts from the corporations upon which they were drawn and delivered the accompanying bills of lading, but never accounted to the plaintiff for any of the moneys so collected. Said drafts may, with respect to their method of collection and manner of payment, be classified as follows: (1) Drafts paid by the drawees' check on outside banks made payable to the Fredonia Bank and subsequently paid by such outside banks directly to the defendant as receiver. (2) Drafts paid by the drawees' checks on outside banks made payable to the Fredonia Bank and paid by the former to the latter before the appointment of the receiver. (3) Drafts paid by the drawees out of their accounts as depositors of the Fredonia Bank; the amounts thereof being charged against such accounts. (4) Drafts paid by the drawees' checks on outside banks made payable to the Fredonia Bank and indorsed and delivered by it to the Merchants' Exchange National Bank in New York City, and credited by such bank to the Fredonia Bank.

"At all the times mentioned in the complaint prior to the 20th day of June, 1905, the assets of the Fredonia National Bank and the assets which came into the defendant's hands as receiver, and which are now in his hands, exceeded the amount of plaintiff's claim." (Stipulation of Facts.)

The plaintiff sought in this action to recover the total amount of said drafts, and claimed that it was entitled to the payment of the same out of any assets of said bank before the defendant as receiver should make any disposition thereof among creditors.

The Circuit Court rendered judgment for the plaintiff for $1,094.96, being the amount of the proceeds of the first class of drafts which it held came into the hands of the receiver. The court also held that the plaintiff, with respect

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the balance of its demands, was a general creditor only. The plaintiff has brought this writ of error.

Kenefick, Cooke & Mitchell (James McC. Mitchell, for counsel), for plaintiff in error.

Rogers, Locke & Babcock (Louis L. Babcock, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The relation of cestui que trust and trustee undoubtedly existed between the plaintiff and the Fredonia Bank. The bank violated every duty which it owed the plaintiff. The proceeds of the plaintiff's drafts held by it or its agents constituted trust funds which might be followed into the hands of the receiver if they could be traced.

There is no difficulty in following the proceeds of the first class of drafts. The moneys ($1,016.72) which the Lake Shore Bank received were impressed with a trust in favor of the plaintiff, and when they were paid over to the receiver the trust still attached, and the receiver was bound to account for them. So the proceeds of the draft ($1,-544.48) which the Columbia Bank received were trust funds, and the receiver was bound to account for the balance thereof ($77.23), which was paid over to him.

After the Columbia Bank had received the proceeds of said draft and had placed the same to the credit of the Fredonia Bank, the latter drew out all of the deposit with the exception of said small balance. Subsequently, however, other moneys of the Fredonia Bank were received by the Columbia Bank, so that the total amount which it paid the receiver was $750.11. But these later deposits were in no way connected with the proceeds of the plaintiff's drafts and no trust attached to them. It is well settled that, where trust funds are placed in a bank account, the amount which the plaintiff can recover must be limited to the lowest balance existing between the time of the deposit and the receivership. Or, as stated by the Circuit Court of Appeals for the Sixth District in Board of Commissioners v. Strawn, 157 Fed. 49, 51, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100:

"It is therefore a part of the rule applicable to following misappropriated moneys in a bank account that, if at any time during currency of the mingled account the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated except as to this balance; the sum subsequently added to the account from other sources not being attributed to the trust fund."

The Circuit Court, therefore, properly gave the plaintiff judgment for the moneys received by the receiver from the Lake Shore Bank and the remainder of the fund—but only that remainder—received from the Columbia Bank.

But while these items obtained by the receiver directly from outside banks are readily followed, the situation with respect to the other classes of drafts is very different. Some of these drafts were used to pay debts of the Fredonia Bank, and, no matter how wrongful the misappropriation may have been, it is not apparent that any trust fund

came into the hands of the bank through the transactions. In other cases the drafts were charged against depositors' accounts and the funds of the bank remained unchanged. Still, for the purpose of testing the strength of the plaintiff's contention, we will assume that the proceeds of certain drafts did come into the possession of the bank before the receivership and constituted trust funds in its hands. The difficulty is, upon the agreed statement of facts, in following such funds into the hands of the receiver.

The stipulation of facts states merely that the "assets" of the bank prior to the receivership, and which came into the receiver's hands, exceeded the amount of the plaintiff's claim. No basis whatever is furnished for tracing the misappropriated moneys into the hands of the receiver, or for holding that they were converted into, or commingled with, any other property or funds in his possession. It is not shown what the assets of the bank consisted of. It may be that the only assets which the receiver obtained were notes and bills receivable—or, perhaps, its banking house—which belonged to the bank before the transactions in question took place. It may be that prior to the receivership the bank used the trust funds to pay its debts with. It may be that these funds were wholly dissipated. There is absolutely nothing to show that they had any connection with any of the property which came into the possession of the receiver. The stipulation of facts is wholly insufficient to show any identity of the property followed with the funds sought to be charged against it or to show that the amount of such property was increased or augmented by such funds. Indeed, the negative is not shown. It does not appear that if there had been no misappropriated moneys the assets of the bank would have been less.

While the right to follow misapplied moneys as trust funds into the hands of a receiver has been extended in the modern decisions, there has never been in the federal courts a departure from the principle that there must be some identification of the property followed with the trust funds. Some of the latest cases say that it is sufficient to show that the property in the possession of the receiver has been increased or augmented by the trust funds. But that is only a different way of stating the earlier rule. It cannot be shown that property in the hands of a receiver has been increased by trust funds unless it is shown that they were converted into or commingled with it. If the plaintiff's contention be well founded, and to follow misappropriated moneys it is only necessary to show that a receiver has, and that the trustee had, assets, the rule is simply that a demand for such moneys is a preferred claim against any substantial estate. To adopt this view is to do away with all the equitable principles out of which the right to follow trust funds grew.

For these reasons we think that the contention of the plaintiff that no identification whatever of trust funds is required is not well founded in principle, and we shall now refer to the cases which, in our opinion, show that it is not supported by authority.

In the leading case of Frelinghuysen v. Nugent (C. C.) 36 Fed. 229, Mr. Justice Bradley said:

"Another difficulty in the complainant's case is the want of identity of the property claimed with the proceeds of the money abstracted from the bank. Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in the place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held by the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried. The difficulty of sustaining the claim in the present case is that it does not appear that the goods claimed—that is to say, the stock on hand, finished and unfinished—were either in whole or in part the proceeds of any money unlawfully abstracted from the bank."

And the Supreme Court of the United States, in Peters v. Bain, 133 U. S. 670, 694, 10 Sup. Ct. 354, 362 (33 L. Ed. 696), after adopting and approving this language from Frelinghuysen v. Nugent, and considering the difficulty there stated, said:

"The same difficulty presents itself here, and while the rule laid down by Mr. Justice Bradley has been recognized and applied by this court (National Bank v. Insurance Company, 104 U. S. 54, 67 [26 L. Ed. 693], and cases cited), yet, as stated by the Chief Justice, 'purchases made and paid for out of the general mass cannot be claimed by the bank, unless it is shown that its own moneys then in the fund were appropriated for that purpose.' And this the evidence fails to establish as to any other property than that designated in the decree."

So in Beard v. Independent Dist. of Pella City, 88 Fed. 375, 379, 31 C. C. A. 562, the court, in speaking of augmenting the property passing to a receiver by trust funds—using the phrase upon which the plaintiff relies—said:

"The foundation of the right on the part of the owner of a trust fund to a preference over general creditors in payment out of a fund or estate that has passed to the assignee or receiver of an insolvent person or corporation is that the trust fund has been wrongfully confused or intermingled with the property of the insolvent, or has been used to increase the value of property, thereby increasing the amount or value of the funds or estate passing into possession of the assignee or receiver; that, if this intermingling had not taken place, the fund passing to the receiver would have been so much less; that the creditors have only the right to subject the property of the debtor to the payment of their claims, and therefore the creditors cannot complain if the total fund coming into the hands of the receiver is reduced by the amount necessary to make good to the owner of the trust fund the sum which was wrongfully used in augmenting the fund or property passing to the receiver. Unless it appears that the fund or estate coming into possession of the receiver has been augmented or benefited by the wrongful use of the trust fund. no reason exists for giving the owner of the trust fund a preference over the general creditors."

The stipulation of facts failing to show that the misappropriated moneys, intact or converted into or commingled with other property, came into the hands of the receiver, the judgment of the Circuit Court adverse to the plaintiff's demands, with the exceptions noted, was right, and it is affirmed.