STATE BANK OF WINFIELD v. ALVA SECURITY BANK et al.

SECOND NAT. BANK v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1916.)

Nos. 4446, 4447.

1. TRUSTS ☞372(3)—TRUST FUNDS—PURSUIT OF—EVIDENCE.
   Where plaintiffs sought to hold defendant banks for funds, resulting from the sale by the cashier of one of the banks of forged notes to plaintiffs, evidence *held* insufficient to trace the funds and establish a trust.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 602, 603; Dec. Dig. ☞372(3).]

2. TRUSTS ☞358—CONSTRUCTIVE TRUST—TRUST FUNDS.
   Defendant cashier sold forged notes to plaintiffs, and then drew sight drafts for the proceeds. These drafts were in the main used to transfer funds to reserve agents, but there was no showing as to the state of defendant's accounts with such reserve agents, or that in all cases the accounts were maintained. *Held* that, it appearing that the cashier juggled the accounts and used the proceeds of forged paper to take up prior forged paper, no trust fund can be established in the accounts with reserve agents, which were grouped under the title "Cash and Sight Exchange"; there being no showing that plaintiffs' moneys were applied to any specific account, which is an essential to maintenance of such claim.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553; Dec. Dig. ☞358.]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suits by the State Bank of Winfield, a banking corporation of the state of Kansas, and by the Second National Bank, a banking corporation of New Hampton, in the state of Iowa, against the Alva Se-

curity Bank, a banking corporation of the state of Oklahoma, and another. From decrees for defendants, plaintiffs appeal. Affirmed.

Sam K. Sullivan, of Newkirk, Okl., and S. C. Bloss, of Winfield, Kan. (G. H. Buckman, of Winfield, Kan., on the brief), for appellants.

H. G. McKeever, of Enid, Okl. (W. H. Hills and Guy S. Manatt, both of Enid, Okl., and Theodore Church, of Los Angeles, Cal., on the brief), for appellee Central State Bank.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

AMIDON, District Judge. M. M. Fulkerson was for several years the cashier and active manager of the Alva Security Bank of Alva, Okl. On the 9th of August, 1913, the bank was found to be hopelessly insolvent and was taken charge of by the state bank commissioner. That was Saturday. By the following Monday morning the defendant, the Central Bank, had been organized. It was composed largely of the stockholders and officers of the Alva Security Bank. The bank commissioner turned over to this new bank substantially all the assets of the old, upon its agreement to pay depositors of the Security Bank in full.

These suits are brought to recover alleged trust funds. They arise out of similar facts, and were tried together. Their basis may be briefly stated as follows: April 16, 1912, Fulkerson, as cashier, sold to the plaintiff, the State Bank of Winfield, what purported to be the note of J. E. Patterson, payable to the Security Bank for $5,000, indorsed "Payment guaranteed, G. A. Harbaugh." Both these signatures were forgeries. The $5,000 was placed to the credit of the Security Bank on plaintiff's books and drawn out from time to time by means of sight drafts. The note was renewed twice on similarly forged instruments. The other plaintiff, the Second National Bank of New Hampton, purchased two forged notes, one for $4,000 on March 23, 1912, and the other for $4,000 on December 16, 1912. The proceeds of the notes were credited to the Alva Bank in its account with the plaintiff and drawn out by drafts. Both plaintiffs now seek to follow the funds thus obtained as a "trust fund" into the hands of the defendant Central Bank, and recover the same in full. They each had on hand a small balance in favor of the Alva Bank at the time of its failure. This the trial court held they were entitled to retain, but dismissed the bill on the merits as to the remainder of their funds upon the ground that plaintiffs had failed to trace the same into the hands of the new bank. Plaintiffs appeal from that part of the decree.

[1] The trial court was right. The plaintiffs wholly failed to trace their funds after they passed from their hands. Their only attempt to do so consisted of unconvincing evidence combined with an erroneous legal theory. Fulkerson testified that drafts such as were drawn against plaintiffs were "generally made to transfer funds to reserve agents." That was the only evidence on the subject. The drafts themselves were not produced, nor was any attempt made to identify the

account in which they were deposited, or to show the state of that account between the time of the deposit and the date of the bank's failure. It is plain that this evidence falls short of the clear proof which the law requires. First, it fails to show that the fund was not dissipated. Fulkerson's statement that such drafts were generally used to transfer funds to reserve agents is insufficient. He was a discredited witness. He was engaged in many hazardous enterprises in which the funds of his bank were squandered. His evidence fails to show that plaintiff's funds were not used in that way. The drafts could have been easily traced and their actual use shown. Second, if the drafts were in fact deposited with reserve banks, the amount so deposited in specific banks should have been shown and then the state of that bank's account should have been followed down to the failure of the Alva Bank. Upon such a showing a trust might have been impressed upon the smallest balance remaining in the account at any time during the period.

[2] The capital defect, however, of plaintiffs' theory is their treatment of the grand division of the bank's assets in its reports known as "Cash and Sight Exchange" as a "fund" within the law relating to the following of trust funds. To adopt that theory is to re-establish under a mere bookkeeping disguise the exploded notion that a trust fund may be recovered if it can be traced into the general assets of an insolvent estate. The courts have shown a tendency to restrict the "trust fund" doctrine. Empire State Surety Co. v. Carroll County, 194 Fed. 593, 114 C. C. A. 435; Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; In re Brown, 193 Fed. 24; Commercial National Bank v. Armstrong (C. C.) 39 Fed. 684. The rule is accurately stated and numerous authorities cited by this court in the first case referred to, as follows:

"It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a *specific fund* or into a *specific identified piece of property* which came to the hands of the receiver."

If a trust fund can be traced into a single account, like cash, or a credit at a single bank, then the trust may be impressed upon the smallest balance that remains in the fund between the time of the deposit and the date when a return of the trust fund is demanded. But the rule does not admit the grouping of numerous accounts together as a single fund. Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37. The term "Sight Exchange" in the estate of the Alva Bank covered its credits with all its numerous correspondents. The subject was not fully developed in the evidence, but there is sufficient to justify the inference that Fulkerson was engaged in selling forged paper to different banks to meet the same kind of instruments which had been previously sold. His correspondents were constantly changing. Some accounts even of reserve agents were entirely closed, and accounts of others were reduced to the vanishing point. Plaintiffs showed that between the time of the purchase of their notes and the bank's failure there was always in "Cash and Sight Exchange" two or three times the amount which was obtained from them on the forged paper. It

232 F.—54

is manifest, however, that no presumption can be entertained from this fact that plaintiff's funds survived the shifting devices of this desperate man. Those funds may have gone into an account which was wholly wiped out. Again, all the accounts with his numerous correspondent banks were as distinct as separate promissory notes. Suppose Fulkerson had testified that sight drafts were usually invested in promissory notes, would a court of equity then treat the entire bills receivable of his bank as a trust fund? Certainly not. The rule requires that the fund be traced to a specific note or notes. Burnham v. Barth, 89 Wis. 362, 62 N. W. 96; Empire Surety Co. v. Carroll County, 194 Fed. 593, 604, 114 C. C. A. 435. For the same reason the numerous credits embraced under the general heading "Sight Exchange" cannot be treated as a single fund.

The decrees of the trial court are affirmed.