SCULLIN STEEL CO. v. NORTH AMERICAN CO. et al.

(Circuit Court of Appeals, Eighth Circuit. February 4, 1919. Rehearing Denied April 12, 1919.)

No. 5060.

1. EQUITY ⬡61—MAXIMS—CLAIMS.

When equities are equal, the legal title must prevail.

2. RECEIVERS ⬡152—CLAIMS—PREFERENCE—EXCESS FREIGHT PAID.

A shipper, who through fraudulent acts of its own employé and a station agent overpaid thé railroad company, is entitled in receivership proceedings to a preference on account of such payment over other creditors, on the theory of a trust, only on establishing that in equity and good conscience its claim ought to be paid in preference to other creditors.

3. CARRIERS ⬡200—OVERCHARGE—FRAUD OF AGENTS—LIABILITY.

While there is a presumption that knowledge of an agent is that of the principal, such presumption does not apply where the agent is engaged in a scheme to defraud his principal, and so a railroad company will not be charged with a scheme between its station agents and an employé of a shipper, whereby freight in a greater amount than was earned was collected, and the two divided the surplus.

4. TRUSTS ⬡95—CONSTRUCTIVE TRUSTS—NOTICE.

Where a railroad company's agent and the agent of a shipper united to defraud the shipper by collecting freight in excess of that earned, and they divided the surplus between them, the shipper could not recover on the theory of a constructive trust, on the ground that the railroad company, by examination of its books and checks deposited by its own agent, might have discovered the fraudulent scheme.

5. RECEIVERS ⬡152—CLAIMS—PREFERENCE.

Where a shipper's agent conspired with the agent of a railroad company to collect freight in excess of the amount due, and the two wrongdoers divided the surplus, held, under the circumstances, that the railroad company was not chargeable with notice of the amounts collected on the shipper's checks, so as to entitle the shipper in receivership proceedings to priority over other creditors; it appearing that the railroad was in no wise enriched by the scheme.

Appeal from the District Court of the United States for the Eastern District of Missouri; Walter H. Sanborn, Judge.

Suit by the North American Company against the St. Louis & San Francisco Railway Company, in which a receiver was appointed. The Scullin Steel Company filed an intervening petition. From an order overruling exceptions to the report of the master, denying intervener's claim to a preference, the intervener appeals. Affirmed.

In an action by the North American Company against the St. Louis & San Francisco Railway Company, receivers for the property of the Railway company were appointed by the District Court for the Eastern District of Missouri. The appellant, the Scullin Steel Company, filed an intervening petition for two claims, but the only question presented on this appeal is whether the claim for $4,500, allowed by the master as an unsecured claim, is entitled to preference over the mortgage and other creditors. The master, to whom the case had been referred, held that it was not entitled to such preference, and upon exceptions he was sustained by the trial judge.

The facts as stated by the learned trial judge in overruling appellant's exceptions to the special master's report are fully sustained by the evidence and

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the findings of the special master, and therefore are accepted as a correct statement of facts by this court. The facts found are:

"The railroad company carried freight for the Scullin Company from May 1, 1909, until May 27, 1913, when the receivers were appointed, and the receivers carried like freight for the Scullin Company from May 27, 1913, until July 31, 1913. This freight was received and delivered at Cheltenham station. During all this time Mr. Betts was the station agent of the railroad company, and after May 27, 1913, of the receivers, and Mr. Dunn was the freight traffic man or freight receiving man of the Scullin Company. It was the duty and practice of Betts to prepare waybills and freight bills of the Scullin Company's freight, and to collect the freight charges for transportation owing by that company for freight delivered to and received from it at Cheltenham station. It was the duty and practice of Mr. Dunn to receive from Betts for the Scullin Company the bills for these transportation charges against the latter company, to compare them for it with the amounts of freight received and shipped by it, to see that the amounts, weights, rates, and extensions were correct, and to draw voucher checks of the Scullin Company for the amounts payable to the railroad company, which were subsequently signed by higher officers of the Scullin Company in reliance upon Dunn's action, then delivered to the railroad company and paid. Betts and Dunn by raising the amounts on some freight bills, by issuing some bills for transportation never conducted, by making false entries in account books, and by issuing vouchers for amounts in excess of the amounts owing, succeeded between May, 1909, and July 31, 1913, in causing the Scullin Company to issue and pay vouchers of $4,500 more than it owed to the railroad company, and in withholding and wrongfully withdrawing this surplus from the railroad company and dividing it between themselves. Neither the railroad company, nor the Scullin Company, nor any of its agents or officers, other than Betts and Dunn, were shown to have had any notice or knowledge of these wrongs until the receivers discovered them in July, 1913, about two months after their appointment. From May 1, 1909, until the appointment of the receivers the railroad company had in its treasury at all times cash on hand equal to or in excess of $24,000. Upon their appointment the receivers obtained from the railroad company about $600,000 in cash, and at all times thereafter prior to the filing of the intervener's petition, they have had on hand an amount largely in excess of the $4,500 claimed by the intervener."

One other fact not mentioned in the statement by the learned trial judge, but which is found by the special master and sustained by the evidence, is "that the vouchers of intervener issued for freight were made payable to the railroad company, and Betts deposited these vouchers in the bank to the credit of the railroad company, but as station agent, he being charged with the total amount of freight due from all shippers at this station, received credit from the railroad company on his general account for the amounts so deposited, and was thus enabled to withhold in cash and divide with Dunn, from other freight collections made by him for the railroad company at such station, an amount equal to the excess charged and collected on claimant's voucher."

John M. Goodwin, of St. Louis, Mo. (Jourdan, Rassieur & Pierce, of St. Louis, Mo., on the brief), for appellant.

Edward T. Miller, of St. Louis, Mo. (William F. Evans, of St Louis, Mo., on the brief), for appellees.

Before HOOK, Circuit Judge, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). On behalf of the appellant it is claimed that as it paid to the agent of the railroad company $4,500 more than its just and proper freight charges, the railroad company became a trustee of the fund, on the ground that, where one has obtained money of another which does not equitably belong to him, through fraud of a third person, a constructive trust

arises in favor of him who is equitably entitled thereto; that this $4,-500 actually went into the treasury of the railroad company, and at no time was its cash reduced below that sum before its property was placed in the hands of the receivers; and that a larger sum was turned over by the railroad company to the receivers. Therefore, it is contended, appellant is equitably entitled to have that money paid back to him by the receiver in preference to the claims of the mortgagees and other lien creditors.

[1, 2] As stated by the learned trial judge in his opinion:

"This suit is a suit in equity, and the intervener is entitled to preference in payment only if it has established the fact that in equity and good conscience its claim ought to be paid in preference to those of the other creditors."

And in Williams v. Jackson, 107 U. S. 478, 484, 2 Sup. Ct. 814, 819 (27 L. Ed. 529), it was held that "when the equities are equal the legal title must prevail."

The facts show that, although the money of which appellant was defrauded by reason of the fraudulent acts of Betts, the agent of the railroad company, and Dunn, its freight traffic man, the railroad company's funds were in no wise swelled, nor was it enriched one penny, as the amount paid over by its agent was only what was actually due from him for freight bills collected as agent of the railroad. The overpayments made by the checks of Dunn were deducted with the moneys collected by Betts from other shippers and then divided between them; therefore the railroad company received no benefit from any of the money of which appellant was defrauded. In Wilson v. Wall, 73 U. S. (6 Wall) 83, 91 (18 L. Ed. 727), it was held:

"A chancellor will not be astute to charge a constructive trust upon one who has acted honestly and paid a full and fair consideration without notice or knowledge."

And as held by this court in Empire State Surety Co. v. Carroll County, 194 Fed. 593, 604, 114 C. C. A. 435, 446:

"It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver"—followed in State Bank v. Alva Security Bank, 232 Fed. 847, 147 C. C. A. 41.

[3] It is not claimed that any of the officers of the railway company had notice of the frauds, but it is earnestly insisted that the railway company is chargeable with notice of the fraud, as the knowledge of its agent Betts was its knowledge, and also that, as the checks of the appellant showed that they were for freight charges, the railway company, by comparing them with the freight bills due from the steel company, would have known that the checks were for excessive sums.

As to the knowledge of the agent being the knowledge of the com-

pany, that is a presumption which the law will conclusively indulge in, for the reason that it will presume that the agent informs his principal of that which his duty and the interest of his principal require him to communicate. But this presumption does not arise, cannot arise, when the agent is engaged in a scheme to defraud his principal, or desires to subserve simply his own personal ends. "In such cases," Mr. Justice Harlan, delivering the opinion of the Court in American Surety Co. v. Pauly, 170 U. S. 133, 156, 18 Sup. Ct. 552, 561 (42 L. Ed. 977), said, "the principal is not bound by the acts or declarations of the agent unless it be proved that he had at the time actual notice of them, or having received notice of them, failed to disavow what was assumed to be said and done in his behalf." Judge Lacombe, who delivered the opinion of the United States Circuit Court of Appeals for the Second Circuit in that case (72 Fed. 470, 483, 18 C. C. A. 644, 656), said on that subject:

"When two officers of a corporation have entered into a scheme to purloin the money of the corporation for the benefit of one of them, in pursuance of which scheme it becomes necessary to make false representations to a third person, ostensibly for the bank, but in reality to consummate said scheme, and for the benefit of the conspirators, and not in the line of ordinary routine business of such officers, and without express authority—the corporation being ignorant of the fraud—the officers are not, in thus consummating such theft, the agents of the corporation."

To the same effect is Interstate Nat. Bank v. Yates Center Nat. Bank, 245 Fed. 294, 157 C. C. A. 486. Therefore the knowledge of its agent is no more chargeable to the railway than the knowledge of appellant's agent, Dunn, is chargeable to it.

[4] Nor is the railroad company chargeable with notice by reason of the fact that by examining its books it could have ascertained that the appellant's checks were in excess of the amounts due. The law does not place such a burden on it. If every time a check, purporting to be in payment of some bill of a large number of bills, is received, the party to whom it is given is required to compare the amount with the bills which accrue daily, it would take a great deal of valuable time to do so, and then would probably be of no real benefit in a case like this; for, as appears from the record, the appellant received large shipments almost daily, and only made payments as they were delivered.

[5] But, aside from this, the finding of facts made by the special master is to the effect that these checks were not turned over by the agent to the railway company, but were deposited by him in the bank to the credit of the railway company, which, when notified by the bank that a certain sum had been placed to its credit by its agent, Betts, would credit him therewith. So the railway company would never know whether these deposits were in cash or checks, and, if checks, whose checks.

In the instant case the equities are much stronger in favor of the receivers than of appellant.

The order denying appellant the preferential right for this sum was right and is affirmed.