## FARMERS' NAT. BANK OF BURLINGTON, KAN., et al. v. PRIBBLE.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1926.)

No. 7212.

**1. Trusts ⬥372(1)—To maintain claim for preferential payment over general creditors of insolvent, cestui que trust must clearly prove that his property or its proceeds went into specific fund or property in hands of receiver.**

It is indispensable to the maintenance by a cestui que trust of a claim for preferential payment over general creditors out of the proceeds of the estate of an insolvent that clear proof be made that the cestui que trust's property, or its proceeds, went into a specific fund, or into a specific identified piece of property, which came to the hands of the receiver or holder of the insolvent's property.

**2. Banks and banking ⬥80(7)—Proof that property of cestui que trust or its proceeds was used by insolvent bank or its receiver to pay indebtedness of insolvent does not warrant preferential payment to cestui over general creditors.**

Proof that such property or its proceeds was used by the insolvent or its receiver or holder to pay the indebtedness of the insolvent, or to diminish its liabilities warrants no such preferential payment.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Ira A. Pribble, doing business under the name and style of the Salina Produce Company, against the Farmers' National Bank of Burlington, Kan., and another. Decree for plaintiff, and defendants appeal. Reversed, with directions.

Roscoe W. Graves, of Burlington, Kan., and O. T. Atherton, of Emporia, Kan., for appellants.

David Ritchie and Omer D. Smith, both of Salina, Kan., for appellee.

Before SANBORN, STONE, and KENYON, Circuit Judges.

WALTER H. SANBORN, Circuit Judge. This is an appeal of N. M. Dudley, receiver of the Farmers' National Bank of Burlington, Kan., and of that bank from a decree of the court below to the effect that the receiver holds the sum of $1,046.89 in trust for the complainant, Ira A. Pribble, that Mr. Pribble has a preferential right over all other creditors of the bank to payment out of its property in the control of its receiver, and that the receiver pay that amount out of property of the bank to him forthwith.

The substance of the cause of action alleged was that the Farmers' Bank on May 10, 1924, held for collection for the plaintiff his draft with bill of lading attached for $1,046.89 on the Farmers' Co-operative Elevator Company of Burlington, Kan., the purchase price of a carload of corn which he had sold and shipped to the Elevator Company; that the Farmers' Bank presented this draft to the People's National Bank of Burlington, Kan., which, at the request of the elevator company, "paid to the said the Farmers' National Bank of Burlington, Kan., the said sum of $1,046.89, and that said sum of money so paid by the said People's National Bank of Burlington, Kan., was actually received by the said the Farmers' National Bank of Burlington, Kan., and that the same has not at any time been remitted to the said plaintiff"; that Mr. Dudley was appointed receiver of the Farmers' Bank on May 21, 1924; that he thereupon took possession of the assets, moneys, and property of that bank, "including the said sum of money so collected by the said the Farmers' National Bank of Burlington, Kan., to wit, $1,046.89, which had theretofore been paid to said Farmers' National Bank of Burlington, Kan."; and that the receiver has had the possession and control of the moneys of

the said plaintiff so paid to the said Farmers' Bank ever since.

The receiver by his answer denied that the Farmers' Bank ever received the proceeds of the draft on the elevator company, denied that any of such proceeds ever became a part of the assets of that bank, denied that its assets were ever augmented thereby, and denied that he as receiver ever received or had possession of any of such proceeds.

[1] It is clear that counsel for the plaintiff were familiar with and probably had before them when they drew this complaint the established rule in the federal courts prescribing the facts requisite to establish a cause of action by a cestui que trust to recover from the receiver of the property of an insolvent corporation the payment in full of a trust fund in his possession in preference to the payment of anything to its general creditors, for they pleaded and set forth such facts in the complaint as stated a perfect cause of action in accordance with that rule, which is:

"It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment [by a receiver] out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only, and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and value thereof which came to the hands of the receiver." Empire State Surety Co. v. Carroll County, 194 F. 593, 114 C. C. A. 435; and cases there cited; Beard v. Independent School District, 88 F. 375, 31 C. C. A. 562; In re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633; American Can Co. v. Williams (C. C.) 176 F. 816; Willoughby v. Weinberger, 15 Okl. 226, 79 P. 777; Macy v. Roedenbeck, 227 F. 347, 356, 142 C. C. A. 42, L. R. A. 1916C, 12; Central Trust Co. v. Chicago, A. & N. Ry. Co. (D. C.) 232 F. 936, 943; State Bank of Winfield v. Alva Security Bank, 232 F. 847, 849, 147 C. C. A. 41; Titlow v. McCormick, 236 F. 209, 149 C. C. A. 399; Zenor v. McFarlin, 238 F. 721, 725, 151 C. C. A. 571; Scullin Steel Co. v. North American Co., 255 F. 945, 947, 167 C. C. A. 237; Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891.

The doctrine that a cestui que trust, whose property had helped to swell the general assets of a corporation which was or became insolvent, has a prior right to or interest in those general assets, without specific identification and tracing of such claimant's property, was again expressly repudiated by this court in the case last cited. The fact that the claimant's property paid or reduced the indebtedness or liability of the insolvent corporation, so that it will pay a larger percentage of its debts, justifies no lien on its assets by or preference in payment to the cestui que trust (1) because such a reduction of indebtedness does not increase the property or the value of the property of the insolvent; and (2) because the property of the claimant so used to pay a part of the insolvent's general indebtedness or liability never goes into, and therefore cannot be traced into, the property or assets of the insolvent which subsequently come into the possession of the receiver. Titlow v. McCormick, 236 F. 209, 149 C. C. A. 399; American Can Co. v. Williams (C. C.) 176 F. 816; Lucas County v. Jamison (C. C.) 170 F. 338; Multnomah v. Oregon National Bank (C. C.) 61 F. 912; Beard v. Independent School District, 88 F. 375, 31 C. C. A. 562; Hecker-Jones-Jewell Mill. Co. v. Cosmopolitan Trust Co., 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148.

[2] The plaintiff did not prove nor was any substantial evidence produced to the effect, that the sum of $1,046.89 was ever paid as alleged by the plaintiff to the Farmers' Bank, or that that sum of money was ever actually received by that bank as alleged in the complaint of the plaintiff; nor did the plaintiff prove nor was there any substantial evidence, that the receiver, who was appointed on May 21, 1924, ever received that $1,046.89, or that he ever had possession or control thereof as alleged in the plaintiff's complaint. On the other hand, these were the relevant facts established at the final hearing:

On the 10th day of May, 1924, the Farmers' Bank had the plaintiff's draft on the elevator company for $1,046.89, and the bill of lading attached to it for the corn for collection of the draft. The elevator company, the drawee, was a customer of the People's National Bank of Burlington. It was the custom of these banks to make a clearance between themselves at about 2:30 in the afternoon of each day by a set-off and exchange of checks and drafts on each other. A short time prior to 2:30 in the afternoon of May 10, 1924, each of these banks added the

amounts of the checks and drafts it had on and against the other, and ascertained which held the larger amount, and then the holder of this larger amount sent its messenger to the other bank with its checks and drafts on that bank, offset and exchanged them, and collected the difference between their respective amounts. On that day the People's National Bank held checks and drafts against the Farmers' Bank aggregating $115.13 more than the aggregate amount of the checks and drafts held by the Farmers' Bank against it, and the Farmers' Bank paid this $115.13 to the People's National Bank. Among the checks and drafts held by the Farmers' Bank, and delivered by it to the People's Bank in payment of that bank's checks and drafts on and against it, was the plaintiff's draft on the elevator company for $1,046.89. Thereafter, on the same day, May 10, 1924, two days before the Farmers' Bank closed and its insolvency became known, the elevator company, the drawee of the draft, paid it to the People's National Bank, which had received it in payment of some of the checks and drafts it held against the Farmers' Bank. The People's Bank accepted the payment of the draft on the elevator company and delivered that draft and the bill of lading to it on May 10, 1924. Here the proof ceases as to the collection of the plaintiff's draft for $1,046.89, and in the People's Bank, so far as the proof goes, its proceeds rest. It was collected by that bank, and its proceeds went into that bank, on May 10, 1924. The Farmers' Bank received none of the proceeds of the draft. It received no fund or money through the clearance, but paid to the People's Bank the balance, $115.13.

The fact that the receiver gave this irrelevant testimony, to wit, that the records of the Farmers' Bank showed that the amount of the draft on the elevator company and some other cash items were included in a draft for $1,800.90 which that bank subsequently drew on its account on the Commerce Trust Company of Kansas City, but that the latter company refused to pay that draft, because the Farmers' Bank had failed and closed before the draft reached the Commerce Trust Company, has not been overlooked; but it was utterly immaterial, because, in the absence of the payment of the draft on the trust company, the rights and equities of the parties remained unchanged by that draft.

The Farmers' Bank closed insolvent on May 12, 1924. It was not until May 21, 1924, that the receiver took possession of

15 F.(2d)—12

any of the property of the bank, and he testified that the records of the Farmers' Bank "showed that on the day it suspended business there was cash and sight exchange on hand, which subsequently came into his hands, in the sum of $6,368.66." No evidence, however, was received or offered tending to prove how much of this $6,368.66 was cash, or how much was sight exchange, or what the sight exchange was. No evidence was received or offered tending to prove what the checks or drafts, or the amount of the checks and drafts, other than the draft on the elevator company, on and against the People's Bank, were with which the Farmers' Bank paid through the clearance the checks and drafts on and against that bank which it held; nor was there any evidence received or offered to prove what the checks and drafts were, or what the amount of them was, with which, through the clearance, the People's Bank paid the checks and drafts against it to the Farmers' Bank.

In this state of the proof the fact is established, and its existence is not contradicted by any evidence, that the Farmers' Bank never obtained or received any of the cash in this $6,368.66 from or on account of the plaintiff's draft for $1,046.89. On the other hand, it expended $115.13 to make the clearance by means of which it used this draft to pay some of the checks and drafts which the People's Bank had against it. Nor is there any substantial evidence that any part of the sight exchange in the $6,368.66, which subsequently came into the receiver's hands, was in any way derived from the plaintiff's draft for $1,046.89. The legal presumption is that that draft and the other checks and drafts on or against the People's Bank which the Farmers' Bank delivered to the People's Bank on May 10, 1924, through the clearance, were delivered to it to pay, and received by that bank in payment of, the checks and drafts which the People's Bank held against it, and which were paid by the checks and drafts the Farmers' Bank delivered to the People's Bank, and which that bank accepted in payment thereof. Those checks and drafts, in the absence of plenary evidence to the contrary, and there is none, were paid by the clearance, and none of them or of their proceeds ever came to the receiver's hands in the $6,368.66, because they had been paid by the clearance on May 10, 1924, two days before the bank closed. The result is that the only effect of the use of the draft of $1,046.89 in the clearance and transaction of May 10, 1924, was not in any way to increase the assets of the Farm-

ers' Bank, but possibly, perhaps probably, to diminish its indebtedness or liability by the amount of the draft, and such a reduction of its indebtedness creates no preferential trust in or lien on the assets of the insolvent over the claims of its general creditors.

The argument that the use of a trust fund by an insolvent trustee to diminish its indebtedness is equivalent to the use of it to add specific and traceable property to its assets is fallacious. The indispensable requisite of a trust in cases of this kind is the ability to take out of the property of the insolvent a traceable, identified part of it, which the insolvent, in violation of its duty as a trustee, has put into it. In a simple case the radical difference is plain. If an insolvent has assets worth $5,000 and owes $10,-000, and, in violation of its trust, it puts into its assets government bonds of its cestui que trust worth $5,000, the cestui que trust may recover these bonds or their traceable proceeds, because such a recovery theretically does not diminish the assets the insolvent rightfully held, nor deprive its general creditors of their recourse to that property. The $5,000 of assets which it had remains, and is still available for the general creditors after the withdrawal of the $5,000 of trust money which was added to the assets. But, if part of such insolvent's indebtedness of $10,000 is its promissory note of $5,000, and if, in violation of its duty, it uses the bonds or money of its cestui que trust to pay and does thereby pay that note thereby reducing its indebtedness to $5,000, and the trust money at the suit of the cestui que trust is then taken out of the $5,000 of assets, there then remains nothing to pay the general creditors, who by such a proceeding lose the 50 per cent. of their claims which they would have received out of the $5,000 of assets the debtor had before the $5,000 of its indebtedness was paid by the $5,000 of trust money.

Mr. Justice Bradley, from whose opinion in Frelinghuysen v. Nugent (C. C.) 36 F. 229, counsel for the plaintiff quote some general statements relative to trusts, did not in that case decide or adopt the theory that the unlawful use of trust money by a trustee in violation of its trust vested in its cestui que trust a like right to its recovery from its receiver that the deposit of it and adding its value to the assets of the insolvent might have created. Justice Bradley held in that case that no trust ex maleficio was proved. In American Can Co. v. Williams, 178 F. 420, 101 C. C. A. 634, cited by plaintiff, the court held that the identification and tracing

of the trust funds into the hands of the receiver or other person from whom it was to be taken was essential to the recovery thereof from such receiver. It is not denied that decisions and opinions of courts have been rendered to the effect that a cestui que trust may have payment of claims for trust funds from the receivers of assets of insolvents in preference to their general creditors without identification or tracing, and that they may have such payments because trust funds were used to pay some of the debts of the insolvent; but those opinions are not in accord with the established principles, rules, and practice in equity in the courts of the United States, or with the great weight of authority throughout the United States.

In Anheuser-Busch Brewing Ass'n v. Clayton, 56 F. 759, 6 C. C. A. 108, the Circuit Court of Appeals of the Fifth Circuit decided that "a bank holding a draft for 'collection and returns,' which accepts a check of the drawee, one of its depositors, and, without separating the amount from the general mass of its moneys, charges the same to the drawee, and credits the drawer on its books, holds the money as agent for the drawer, and not as trustee; and after the bank becomes insolvent the drawer is a mere general creditor, and not entitled to priority of payment out of the bank's assets."

In American Can Co. v. Williams, 178 F. 420, 101 C. C. A. 634, the plaintiff sought to recover from the receiver of an insolvent bank the proceeds of drafts sent to the bank for collection; some of the drafts had been paid to the bank by the drawee's checks on outside banks made payable to the collecting bank; others were paid by the drawees out of their own accounts as depositors—the funds being charged against such accounts. The assets which came into the hands of the receiver exceeded the amount of the plaintiff's claim, but it was not shown that the money represented the proceeds of any of the drafts. The Circuit Court of Appeals of the Second Circuit said:

"If the plaintiff's contention be well founded, and to follow misappropriated moneys it is only necessary to show that a receiver has, and that the trustee had, assets, the rule is simply that a demand for such moneys is a preferred claim against any substantial estate. To adopt this view is to do away with all the equitable principles out of which the right to follow trust funds grew."

In Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891, Van Val-

kenburgh, Circuit Judge, delivering the opinion of this court, filed April 28, 1926, said:

"So here the answer simply admits that the receiver is in possession of all the tangible assets of the bank. There is no showing that the funds represented by this bookkeeping credit were ever segregated from the general mass of the funds of the bank. The bank neither received nor paid out any money, and a claim now exists for the full amount of the notes; but that claim is a general one, and insusceptible of being followed, either in kind or by substitution, into the hands of the receiver.

"In State Bank of Winfield v. Alva Security Bank, 232 F. 847–849, 147 C. C. A. 41, this court said: "To adopt that theory (as. to a fund) is to re-establish under a mere bookkeeping disguise the exploded notion that a trust fund may be recovered, if it can be traced into the general assets of an insolvent estate. * * * The rule is accurately stated and numerous authorities cited by this court in the first case referred to (Empire State Surety Co. v. Carroll, 194 F. 593, 114 C. C. A. 435) as follows: 'It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver.'

"The case made by the appellant falls short of this requirement. Transactions upon which it relies consisted of a mere shifting of credits on the books of the insolvent bank. The assets of that bank were not increased thereby, nor were any funds set apart which, or any part of which, came into the hands of the receiver."

Our conclusion is that the plaintiff in this case failed to prove two indispensable requisites to his alleged cause of action: First, that his draft for $1,046.89 or its proceeds ever went into a specific identified piece of property or fund or funds which were in the hands of the Farmers' Bank when it closed on May 12, 1924; and, second, that such draft or its proceeds ever went into a specific identified piece of property or fund in the hands or control of the defendant, the receiver.

The decree below must therefore be reversed, with directions to the court below to dismiss the bill on its merits, with costs against the plaintiff.