## POTTORFF v. KEY.
### No. 6850.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1933.

Thornton Hardie, of El Paso, Tex., for appellant.

Ed M. Whitaker, of El Paso, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appellee, Key, gave to First National Bank of El Paso, Tex., his check on another bank for $500, and took a receipt reading: "Received of the above mentioned A. H. Key the sum of $500.00 together with a copy of the foregoing contract to be held by the First National Bank of El Paso, Texas, under the terms and conditions of the foregoing contract." That contract was one for the purchase by Key from a third person of cer-

tain realty, in which it was stipulated that, pending examination of the title, Key should place $500 with the bank "in escrow," to be forfeited to the vendor as damages if the title proved good and Key failed to purchase; or to be applied as purchase money if Key kept his contract; or to be returned to Key if the title proved bad. The next day the bank collected the check, accepting instead of cash the cashier's check of the drawee bank. Three days later this cashier's check was taken to the clearing house and used to offset checks drawn against the First National Bank by its customers, the clearing house transaction resulting in a large balance against the First National Bank, which was charged against its reserve at the local branch of the Federal Reserve Bank, and later made good by a deposit of funds drawn from other sources. The First National Bank several weeks later failed and was put into a receiver's hands. Key became entitled to have the $500 back, and sued to establish a preferential claim against the fund in the receiver's hands. The District Court held the $500 to be a trust, and that the bank had treated the cashier's check representing it as cash and had commingled it with its other cash items, making its total cash assets a common fund impressed with the trust, and, it being proved that the bank's cash assets had never since been less than $500, the receiver was ordered to pay that sum as a preferred claim. The receiver appeals.

We agree that the $500 was not a general deposit or a loan to the bank, but was a special deposit, in law a bailment and in equity a trust. It was shown that the banks in El Paso habitually used money thus deposited "in escrow," putting in its place as a memorandum a cashier's check or a certificate of deposit; but there is no evidence that Key knew of, or assented to, any such thing. The bank's agreement with him was express that it would hold—not borrow or use—the money, and would in the contingency which happened return it to him. The ownership of the cashier's check which represented the $500 was in Key or his vendor and not in the bank.

We do not agree that this trust res became so commingled with the funds of the bank as to be unidentifiable and thus raise a lien by confusion. If the cashier's check for the $500 was put with the other cash items of the bank, it continued to be easily recognizable, and could have been reclaimed. When taken to the clearing house and used to offset checks drawn on the bank it was still

the identifiable property of Key or his vendor wrongfully thus used. Had the bank gotten anything in exchange for it, that thing would have been claimable as the proceeds of the trust res. Jefferson Standard Life Ins. Co. v. Wisdom (C. C. A.) 58 F.(2d) 565. But, when irrevocably used to discharge the bank's obligations to its general depositors, the trust res was dissipated and lost. City Bank of Hopkinsville v. Blackmore (C. C. A.) 75 F. 771; Beard v. Independent Dist. (C. C. A.) 88 F. 375; First Natl. Bank v. Williams (D. C.) 15 F.(2d) 585; Larabee Flour Mills v. First Natl. Bank (C. C. A.) 13 F.(2d) 330; Nyssa-Arcadia Dist. v. First Natl. Bank (D. C.) 3 F.(2d) 648; Farmers' Natl. Bank v. Pribble (C. C. A.) 15 F.(2d) 175. Only the personal liability of the trustee remained, and, unless by the aid of a statute, there is for that no preferential lien on the defaulting trustee's insolvent general estate. Spokane County v. First National Bank (C. C. A.) 68 F. 979; Board of Commissioners v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100. It may be true that, if the trust money had not been used to make the clearance, cash of the bank would have been, so that the use of the trust money in this way preserved to that extent the cash which remained and later went into the receiver's hands; but this benefit has always been considered too uncertain and elusive to constitute a tracing of the trust. City Bank v. Blackmore (C. C. A.) 75 F. 771; In re Brown (C. C. A.) 193 F. 24; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; First National Bank v. Williams (D. C.) 15 F.(2d) 585; Farmers' Natl. Bank v. Pribble (C. C. A.) 15 F.(2d) 175. In Frelinghuysen v. Nugent (C. C.) 36 F. 229, 239, misapplied money used for pay rolls was denied a lien on manufactured goods. Justice Bradley stated the law in words quoted with approval in Peters v. Bain, 133 U. S. at page 693, 10 S. Ct. 354, 33 L. Ed. 696, thus: "Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it, depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried." The lien by confusion rests upon a certainty that the mixed mass which passes to the receiver contains the trust property or its proceeds, though not capable of separation and identification. This certainty is often reached through a presumption that withdrawals from the mass are of the wrongdoer's own portion. But, if at any time the withdrawals are so great as necessarily to have encroached on the trust portion, the lien will not usually enlarge to cover later additions to the mass. Board of Commissioners v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; American Can Co. v. Williams (C. C. A.) 178 F. 420. In the case at bar, so far from certainly tracing the trust res or its proceeds into the hands of the receiver, the evidence traces it elsewhere. It was never converted into cash or into a credit which had no earmarks, was never so confused with other similar property as to become unidentifiable. We know that neither the cashier's check for $500 nor anything representing it is in the fund in the receiver's hands. To subrogate Key to the place of the checkholders who were paid by this check would do him no good, for still he would be what he is now, a mere general creditor. Though the victim of a wrong and an involuntary creditor, he has for that reason no better equitable right to what is in the receiver's hands than other creditors have. The contrary view expressed in San Diego County v. California Natl. Bank (C. C.) 52 F. 59, was disapproved in Multonomah County v. Oregon Natl. Bank (C. C.) 61 F. 912, and Spokane County v. First Natl. Bank (C. C. A.) 68 F. 979, and we believe has not since been asserted in the federal courts.

Schumacher v. Harriett (C. C. A.) 52 F. (2d) 817, 82 A. L. R. 1, is much relied on to sustain the judgment appealed from. The court there reviews the cases and concedes that they establish such principles as we have just asserted, but avoids their consequences by the novel view that a trust check, when treated by a bank as one of its cash items, is thereby confused with its cash as though it had been unidentifiable currency; and that, if the bank misuses the check, it thereby sets apart as a trust res an equivalent value of other cash assets. Such a doctrine amounts to saying that in every case of misapplied money or money's equivalent the wrongdoer's other cash and cash items stand in its place so long as he has any, establishing in effect

a general lien on all such. "If the plaintiff's contention be well founded, and to follow misappropriated moneys it is only necessary to show that a receiver has, and that the trustee had, assets, the rule is simply that a demand for such moneys is a preferred claim against any substantial estate. To adopt this view is to do away with all the equitable principles out of which the right to follow trust funds grew." American Can Co. v. Williams (C. C. A.) 178 F. 420, at page 423. We hold in this connection that, if a trust res can be followed, it must be; and that a lien by confusion can be fixed on a fund only when the confusion is actual and when the fund is shown to have really received and to still contain the trust res or its proceeds.

The judgment is reversed, with direction to disallow appellee's claim as preferred and to allow it as a general claim only.