KNAUTH et al. v. KNIGHT et al.

(Circuit Court of Appeals, Fifth Circuit. January 8, 1919.)

No. 3303.

1. BANKRUPTCY ⊜140(2)—EQUITABLE LIEN—TRUST ARISING FROM FRAUD.

Where bankrupts each day overdrew their bank account, which was secured by collateral, and each night made deposits to cover, the fact that money fraudulently obtained from complainants was from time to time included in such deposits *held* not to impress the surplus fund arising from the sale of the bank collateral after bankruptcy with a trust in favor of complainants.

2. BANKRUPTCY ⊜140(2)—SUBROGATION ⊜21—NATURE OF RIGHT—PAYMENT OF DEBTOR WITH MONEY OBTAINED BY FRAUD.

The fact that money fraudulently obtained from complainants by bankrupts was used in paying overdrafts at a bank did not give complainants by subrogation a lien on collaterals held by the bank as security.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Suit in equity by Wilhelm Knauth and others against John W. Knight and others. Decree for defendants, and complainants appeal. Affirmed.

See, also, 219 Fed. 721, 135 C. C. A. 419.

Geo. T. Hogg, of New York City, and E. H. Cabaniss, of Birmingham, Ala., for appellants.

Augustus Benners and Forney Johnston, both of Birmingham, Ala., for appellees.

Before BATTS, Circuit Judge, and FOSTER, District Judge.

FOSTER, District Judge. In this case appellants filed their bill to rescind a fraud practiced on them by the bankrupts, Knight, Yancy

& Co., and seeking to impress certain assets of the bankrupt estate with a trust in their favor for the amount of $98,005.58. The District Court dismissed the bill on final hearing, and from that judgment this appeal is prosecuted.

[1] While the record is voluminous, the salient facts may be briefly stated. For a number of years Knight, Yancy & Co., were cotton buyers and exporters in Decatur, Ala., and in 1910 were adjudicated bankrupts. In the course of their business they executed many fictitious bills of lading and other documents, and annexed them as security to drafts which they discounted or sold. When adjudicated bankrupts, they owed nearly $5,000,000 on these fraudulent transactions, including the claim of appellants. The bankrupts did business with the First National Bank of Decatur in the following manner: In the course of the day they would overdraw their account, and at the close of business that day would make deposits to cover the overdraft. The overdrafts were secured by the pledge of certain certificates of stock and warehouse receipts for cotton. Their overdraft sometimes ran up to over $200,000. From time to time, as the drafts were disposed of to appellants, the money obtained from them found its way into the First National Bank, and there mingled with the general funds of the bankrupts, of which it was a small part, and helped to liquidate the daily overdraft.

Appellants elected to rescind the fraudulent transactions by which their money was obtained, and have not participated in the bankruptcy proceedings. After bankruptcy, the bank liquidated the security it held and turned over to the trustee a surplus of about $155,000.

It is the theory of appellants that the money obtained from them went to reduce the indebtedness of the bank secured by the collaterals pledged, and therefore the bankrupt estate was to that extent enriched and a trust created in their favor on the said property. The District Court found against this contention, holding that while appellants' money went to pay an overdraft which was secured by a lien on the property pledged, and reduced the secured indebtedness of the bankrupts to the bank, it also had the effect of enabling the bankrupts to increase their indebtedness of like character and amount on the succeeding business day; therefore the estate was not enriched for the benefit of the general creditors. This holding was correct. It is evident the money went to pay pre-existing debts, and did not increase the free assets at all. Wuerpel v. Com. Bank, 238 Fed. 269, 151 C. C. A. 285.

[2] It is also contended by appellants that, as the money obtained from them went to reduce the lien of the bank on the collaterals held by it, they are subrogated to the rights of the bank. The District Court decided this contention against appellants, and held that, when indebtedness to the bank was paid by depositing the proceeds of the drafts, the lien was satisfied and ceased to exist, so that when bankruptcy intervened the bank had no lien. Error is assigned to this.

Appellants' theory of subrogation is too far-fetched and attenuated to be tenable. In the case of Ætna Life Insurance Co. v. Middleort, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, the Supreme Court

reviews the authorities, clearly states the principles of subrogation, and quotes with approval the following rule:

"It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect."

It is clear that appellants are not subrogated to the rights of the bank. The funds obtained from appellants by the bankrupts did not come into the possession of the trustee at all, nor did any property into which these funds entered, and there was no actual enrichment of the estate for the benefit of the ordinary creditors.

We do not find the cases cited by appellants persuasive. In each of them the money or property obtained by fraud was traced and identified, and no subsequent lien was created on the fund or property into which it entered.

The judgment of the lower court is affirmed.