## MARK v. WESTLIN.

District Court, D. Minnesota, Sixth Division.
April 6, 1931.

F. H. Peterson, of Moorhead, Minn., for plaintiff.

C. G. Dosland, of Moorhead, Minn., for defendant.

SANBORN, District Judge.

The pertinent facts are as follows:

The defendant is the receiver of the First and Moorhead National Bank, having been appointed to succeed B. C. Schram, who was first appointed by the Comptroller of the Currency after the bank was closed on December 22, 1928.

The plaintiff, on December 21, 1928, had on deposit in the bank $2,559.71. She then arranged with the assistant cashier of the bank to purchase for her $2,500 of Liberty bonds of the United States, and gave to him a withdrawal slip upon her savings account for $2,534.46, the amount which he estimated would pay for the bonds. He gave her a receipt reading as follows: "Received of Mrs. Ida Mark twenty-five hundred thirty four dollars, forty-six cents ($2534.46) for twenty-five hundred (2500) dollars in Fourth Liberty Loan Bonds to be registered in the name of Mrs. Ida Mark, Moorhead, Minnesota." The withdrawal from her savings account was noted in her passbook, but was not charged against her account on the books of the bank. The bonds were ordered from the Federal Reserve Bank of Minneapolis, and the amount paid for them was to be charged by the Federal Reserve Bank against the account of the First & Moorhead Bank in the Reserve Bank. It was the intention of the assistant cashier to wait until he received notice of purchase of the bonds and the amount charged against the account of the First & Moorhead Bank before putting through the charge against Mrs. Mark's savings account on the books.

The First & Moorhead National Bank closed on the following day. The bonds, although purchased by the Federal Reserve Bank, as directed, were never delivered to or paid for by the Moorhead Bank, and were retained by the Reserve Bank. At the time it closed, the Moorhead Bank had on hand some $40,000 in cash. The plaintiff, believing herself to be a preferred creditor, asked for the allowance of her claim in full. The receiver refused to permit her to file a claim as a preferred creditor.

The question is whether, under the law, Mrs. Mark is entitled to have her claim paid in full before the other creditors of the bank may receive their pro rata share of its assets.

One difficulty which some courts have had in dealing with the question of recovery of funds misapplied by an insolvent bank arises out of a failure to take into consideration

the fact that the controversy is not between the claimant and the bank, but between the claimant and the other creditors with respect to a particular fund in the hands of the receiver.

In Larabee Flour Mills v. First Nat. Bank of Henryetta (C. C. A. 8th Circuit) 13 F. (2d) 330, 331, Judge Lewis says: "The real issue in each case is between the preference claimant and general creditors of the bank. They will get less if the preference is allowed. Each claimant asserted an equity, that the assets taken over by the Comptroller are trust funds in which it is a preferred beneficiary. It is difficult to explain or understand by what equitable right one who has not contributed to the creation of a fund should be given a special and superior interest therein, though some of the state courts seem to so hold."

Justice Bradley, in Frelinghuysen v. Nugent (C. C.) 36 F. 229, 239, used the following language: "Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it, depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried." This statement has been repeatedly approved by the courts of this circuit. See Metropolitan Nat. Bank v. Campbell, Com'n Co. (C. C.) 77 F. 705, 707; Beard v. Independent District of Pella City (C. C. A.) 88 F. 375, 377.

It is firmly settled by numerous decisions of the courts of this and other circuits that, in order to establish a preferred claim, the claimant must show that the funds of the bank were actually augmented by the transaction under which he claims his right to priority.

In Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593, 604, it was said: "It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver. * * *" See, also, State Bank of Winfield v. Alva Security Bank (C. C. A.) 232 F. 847; Farmers' Nat. Bank v. Pribble (C. C. A.) 15 F.(2d) 175; Larabee Flour Mills v. First Nat. Bank (C. C. A.) 13 F.(2d) 330; Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891.

In Beard v. Independent Dist. of Pella City, supra, this language was used (88 F. pages 379, 382):

"Unless it appears that the fund or estate coming into possession of the receiver has been augmented or benefited by the wrongful use of the trust fund, no reason exists for giving the owner of the trust fund a preference over the general creditors. * * *

"And to assume (the position) of the owner of a trust fund, and as such to assert a preferential right to payment in full out of the cash fund coming into the hands of the receiver, to the detriment of the general creditors, it [the claimant] ought to be held to satisfactory proof of the fact upon which the right to a preference rests, to wit, that the fund coming into the receiver's hands has been augmented and increased by the addition thereto of the trust money, not as a matter of inference, nor as a result of mere entries on books of account, but because the fund or property against which the preference is sought to be enforced has been in fact augmented or benefited by the addition thereto of the trust fund."

In the case last referred to, the claimant made, in substance, the same contentions which are made here. The court said (88 F. 381): "It is claimed in argument that the court must treat the case just as though the treasurer of the school district had presented the check, had obtained the money thereon, and had then deposited the money in the bank as the money of the school district, but this was not in fact done; and as against the creditors, whose money in fact created the cash amount coming into the hands of the receiver, why should fiction be resorted to in order to sustain a preference on behalf of the school district to payment out of a fund not augmented in fact by any sum belonging to the district?"

It is claimed here by the plaintiff that the giving of the withdrawal slip to the assistant

cashier was the same as though she had drawn out of the bank that much currency and had then delivered it to the assistant cashier for the purpose of purchasing the Liberty bonds. There is nothing which Mrs. Mark did which augmented the assets of the bank which came into the hands of the receiver. Its cash assets were contributed by others. Had the withdrawal slip never been drawn, and had no instructions been given for the purchase of the bonds, the result would have been the same so far as the receiver is concerned. The other creditors were in no way benefited by what Mrs. Mark did. The case is therefore clearly distinguishable from Bartholf v. Millett (C. C. A.) 22 F.(2d) 538.

Finding the facts and the law to be as I have herein stated, my conclusion is that the defendant is entitled to a decree dismissing the complaint, with costs.