CITY OF LINCOLN, NEB., et al. v. RICKETTS (two cases).*

RICKETTS v. CITY OF LINCOLN, NEB., et al. (two cases).

Nos. 10213, 10218–10220.

Circuit Court of Appeals, Eighth Circuit.
April 27, 1935.

*Rehearing denied July 3, 1935.

Don W. Stewart, of Lincoln, Neb. (A. A. Whitworth, Charles B. Paine, and Stewart, Stewart & Whitworth, all of Lincoln, Neb., on the brief), for City of Lincoln et al.

Perry W. Morton and R. A. Boehmer, both of Lincoln, Neb., for L. A. Ricketts, as trustee in bankruptcy, etc.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

There is involved in these appeals the right of the city of Lincoln, Neb., to a pri-

ority in the payment of its claim of $45,-509 against the Lincoln Trust Company, bankrupt. The lower court allowed priority in the amount of $628.63, and denied priority as to the balance of the claim, but allowed it as a general claim. Both parties have appealed. There is no dispute as to the facts so far as they are disclosed by the record, though there may be some dispute as to what facts may properly be inferred from those established.

The city of Lincoln, a municipal corporation, organized under special charter, on September 26, 1928, paid to the Lincoln Trust Company the sum of $45,000. The character of the business of the Lincoln Trust Company is not shown in any detail, but it is stipulated that at all times mentioned in the proceeding, and up to July 9, 1932, it was a corporation "organized and existing under the laws of the State of Nebraska and engaged in conducting a general trust company business." On receipt of these funds from the city treasurer, it delivered to the city treasurer nine certificates of $5,000 each, in substantially the following form:

"No. ———

"Lincoln, Nebraska, Sept. 26, 1928

"No. ———

"This is to certify that the Lincoln Trust Company of Lincoln, Nebraska, holds for investment in Trust, funds belonging to City Treasurer of Lincoln, Nebraska, in the sum of Five Thousand & no/100 Dollars ($5,000.00) with interest at 3 per cent per annum payable quarterly from date until returnable to owner on demand 19——.

"This Trust Certificate bears no per cent interest after maturity.

"Lincoln Trust Company,
    "By [S.] Howard Hadley, Secretary."

The funds so received were placed in the general bank account of the trust company and were carried on the books of the trust company in its general ledger account and not on the books or accounts of the trust department. The entry in the general ledger account is as follows:

| "Trust Certificate | City Treasurer of Lincoln | Credit | Balance |
| --- | --- | --- | --- |
| 10-1-28 | By 160-162 to 169 inclusive $5,000.00 each at 3% on demand | $45,000.00 | $45,000.00" |

The trust company paid interest to the city at the rate of 3 per cent. per annum up to March 26, 1932. On June 14, 1932, the city demanded payment of the principal and accrued interest on these certificates, the demand being refused, and on July 9, 1932, the trust company was adjudged a bankrupt. At the time these funds were paid to the trust company it, as principal, and the Standard Accident Insurance Company as surety, executed a bond to the city, by which it was agreed that this money should be repaid to the city upon its demand.

At the time the city paid the $45,000 to the trust company, it had no separate bank account for its trust department, but thereafter, on October 3, 1931, it created a trust department bank account, and at that time transferred to that account $49,-679.17, a sum sufficient to take care of all its trust liabilities, except the amount due the city of Lincoln, which was not included in the account. Up to the time of the demand of payment, the lowest balance in cash in the general bank account of the trust company was $7,875.97, and on that date the trust company had, in addition, certain so-called cash items amounting to $5,193.45. Following the city's demand, the trust company took from its general account $44,982.46, and transferred it to the trust department of the trust company, where it was set up as a new account designated "Segregated Assets." This fund was to cover certain items of principal payments, interest, and other payments that were received after April 7, 1932. At the time of adjudication in bankruptcy there was a balance in this segregated assets account of $25,097.09.

Out of its general bank account the trust company also received funds from various persons for which it issued receipts, and which accounts were known as "Modern Investments." These were in the nature of installment contracts for the purchase of real estate mortgage bonds, and at the time the city treasurer paid the trust company the funds here in controversy, the money in all the trust company's accounts was carried in the general bank account of the company.

The appellant Standard Accident Insurance Company, pursuant to the terms of its bond, paid the city the amount of its claim, whereupon the claim was assigned to the insurance company. The city first filed a general claim against the bankrupt, which was duly allowed. Subsequently, on leave granted, the city filed an amended claim, seeking priority of payment over general

creditors. The referee denied the right of priority asserted by the city, and on review the lower court modified the order of the referee by allowing priority in the amount of $628.63.

It is here urged (1) that a trust was created by an agreement of the parties; and (2) that the city has the right of a sovereign to priority in payment. Other questions are urged, but in the view we have taken on these issues, they are not material to a determination of the case.

■ As has been observed, the referee was of the view that no trust relation was created by the contract of the parties. The lower court expressed very grave doubts on this question, but concluded that as there was nothing in the record to indicate the trust nature of the transaction, except the contract itself, and the fact that interest was paid, and the fact that the trust company felt perfectly free to use the money in any manner it saw fit, the issue should be resolved in favor of the existence of the trust relation. The city is 'asserting this trust relation and its consequent right of priority, and the burden was upon it to prove facts giving rise to such a relation. Whether or not the payment of these funds to the trust company gave rise to a trust relation depends upon the mutual understanding and intention of the parties at the time of the payment. Northern Sugar Corporation v. Thompson (C. C. A. 8) 13 F.(2d) 829; Keyes v. Paducah & I. R. Co. (C. C. A. 6) 61 F.(2d) 611.

The instrument upon which the insurance company relies is very meager and ambiguous. It certifies that the trust company holds for investment in trust funds belonging to the city treasurer. Neither the instrument nor any acts of the parties, nor other testimony, indicates what, if any, investments were in contemplation, when, if at all, such investments were to be made, nor on whose behalf they were to be made. Apparently, it was in contemplation of the parties that the money should become the funds of the trust company because the trust company not only agreed to pay interest on these funds, but it in fact did pay interest thereon for some four and a half years, and no investment was ever made. Again, the funds were not kept separate, but went into the general bank account of the trust company with other general funds. In addition to this, it is significant that the trust company gave bond, not for the faithful discharge of any duty it may have assumed as trustee in the investment of these funds, but for the payment of the funds to the city upon the city's demand, and the surety on the bond, now the beneficial owner of the claim, paid the amount of money due the city, together with interest.

■ Interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money. Redfield v. Ystalyfera Iron Co., 110 U. S. 174, 3 S. Ct. 570, 28 L. Ed. 109; Loudon v. Taxing District of Shelby County, 104 U. S. 771, 26 L. Ed. 923; Maryland Casualty Co. of Baltimore v. Omaha Electric Light & Power Co. (C. C. A. 8) 157 F. 514; Davey v. First Nat. Bank of Deadwood, 10 S. D. 148, 72 N. W. 83. The provision for the payment of interest is inconsistent with the thought that the title to this money remained with the city. Certainly, the provision for the payment of interest implied that the trust company had the right to use it for its own benefit,, and apparently the parties so understood and so treated the transaction. Without any objection or protest on behalf of the city, the funds were turned into the general bank account of the trust company, and, so far as appears from the record, no instructions were ever given the trust company, and no inquiry made by the city, with reference to these funds for four and a half years, during all of which time the city collected its semiannual interest from the trust company.

■ It is possible that the city may have had two purposes in view in paying this money to the trust company. One was a possible future investment, and the other was the securing of interest from the funds. The last purpose is definitely indicated not only by the contract but by all the subsequent acts of the parties, and the second purpose was inconsistent with the first. Had the first purpose in fact been carried out, and some investment actually made on behalf of the city, the property invested in would thereby be segregated and set apart and held in trust for the city. The funds, with the knowledge and consent of the city, were not handled as trust funds, and if the parties originally intended creating a trust relation, that purpose was manifestly subsequently abandoned. City Council of Charleston v. Elliott (C. C. A. 4) 73 F.(2d) 920; Keyes v. Paducah & I. R. Co. (C. C. A. 6) 61 F.(2d) 611, 86 A. L. R. 203; Northern Sugar Corporation v. Thompson (C. C. A. 8) 13 F.(2d) 829; Santee Timber Corporation v. Elliott (C. C. A. 4) 70

F.(2d) 179, 93 A. L. R. 874; McNulta v. West Chicago Park Commissioners (C. C. A. 7) 99 F. 900; Swan v. Children's Home Society (C. C. A. 4) 67 F.(2d) 84, 87; State v. Bartley, 39 Neb. 353, 58 N. W. 172, 176, 23 L. R. A. 67; Board of Education v. Union Trust Co., 136 Mich. 454, 99 N. W. 373, 374; City of Aberdeen v. National Surety Co., 151 Wash. 55, 275 P. 62, 65 A. L. R. 794; Lewis v. Dark Tobacco Growers' Co-op. Ass'n, 247 Ky. 301, 57 S.W.(2d) 8, 10.

In City Council of Charleston v. Elliott, supra, the city asserted right of priority for deposits made by it to meet tax anticipation notes executed by the city. The claim of the city was that the deposits were trust funds in the hands of the bank. After reciting that the deposits were made under an agreement that tax collections would be deposited in special accounts separate from the general deposit account of the city and that the tax anticipation notes of each tax year would be paid from the account in which the taxes for that year had been deposited, it is said:

"The funds so deposited were mingled by the bank with its general assets; and there is nothing to show that it was contemplated by any one that they should be segregated from the general funds of the bank or that the bank should handle them as trust funds held by it as a fiduciary. On the contrary, it appears that the bank paid interest on the deposit balances in the tax accounts. It is true that in December, 1931, there was talk of withdrawing a part of the funds from the bank in order that a division of deposits might be made among the other banks of the city and that at that time the bank opposed the withdrawals on the ground that the deposits were trust funds, as well as on the ground that their withdrawal would ruin the bank; but not even then was there any suggestion that the funds deposited by the city were being segregated from the other funds of the bank or were being handled otherwise than as funds received under general deposits. * * *

"The principal argument made in behalf of the city is that the conversations in December show that the deposits in question were trust funds and that they should be so treated by the court, irrespective of such incidental matters as the handling of the funds and the payment of interest thereon. We think, however, that greater weight should be given to the manner in which the deposits were made, to the way in which they were handled by the bank without objection from the city, and to the fact that interest was paid upon them, than to mere language used in describing them, if this language were inconsistent with the nature of the transactions as shown by what the parties did, for it is axiomatic that equity regards substance and not form."

■ In the absence of any writing clearly indicating the intention of the parties, in attempting to determine that intention, we are inclined to give more heed to what was done by the parties than to what was said by them.

■ Even though the money was paid with the thought of a possible future investment, this special purpose does not in itself give rise to a trust relation. Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288; Mark v. Westlin (D. C.) 48 F.(2d) 609; Kershaw v. Kimble (C. C. A. 10) 65 F.(2d) 553; Northern Sugar Corporation v. Thompson (C. C. A. 8) 13 F.(2d) 829.

What is said by the Supreme Court of Nebraska in State v. Bartley, supra, seems here apposite. It is there said: "Who ever heard of that kind of a deposit of money being paid out on checks, or of a banking institution paying for the privilege of holding a special deposit of funds? The identical moneys deposited are not required to be returned. Obviously, the bank receiving them had the right to use and control the money as its own. It could loan the funds for the purpose of earning the money with which to pay the stipulated interest due the state."

In Board of Education v. Union Trust Co., supra, it is said: "It would be doing violence to all experience to say that it was intended that the bank should keep this fund intact as a special deposit, and at the same time pay interest thereon to the depositor."

In Swan v. Children's Home Society, supra, quoting from Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483, it is said: "'Where the agreement is to pay interest, the agreement is obligatory; but the fact that the depositary agreed to pay interest affords very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit.'"

In the recent case of Lewis v. Dark Tobacco Growers' Co-op. Ass'n, supra, it

is said: "It is a matter of common knowledge that interest is paid on money for the use of it. Webster's Unabridged Dictionary defines the word 'interest' as follows: 'A rate per cent of money paid for the use of money or the forbearance of demanding payment of a debt.'"

■ We conclude that the instrument relied upon, in view of the contemporaneous and subsequent acts of the parties thereto, and viewed in the light of the surrounding facts and circumstances, did not create a trust relation between the city and the trust company. But it is urged by appellant insurance company that if the money was paid to the trust company as a deposit, then it became a trustee ex maleficio because it had no right to accept deposits. The trust company in this transaction was not in the banking sense of the word receiving deposits; but we are of the view that the transaction resulted in the creation of the relation of debtor and creditor. The trust company did have the power to borrow money, and this it did, paying interest for the use thereof, and giving a bond in the nature of security. The city has received the benefit of the transaction, having accepted from time to time the interest, and knowingly participated therein. It is hardly in position to come into a court of equity repudiating or casting aspersions upon the transaction. It must come into court with clean hands.

It is earnestly urged that by right of sovereignty the city is entitled to priority in the payment of its claim. At common law, the Crown had a priority over all subjects for the payment of debts due it. In a receivership case arising in a state where the common law prevailed without statutory modification, and where the Supreme Court of the state had not theretofore passed upon the question, we held that such prerogative right inhered in a city as an agency of the state exercising a delegated sovereignty. City and County of Denver v. Stenger (C. C. A. 8) 295 F. 809.

In Fiman v. State of South Dakota (C. C. A. 8) 29 F.(2d) 776, 777, we held the rule not applicable to a settlement in the distribution of the assets of a national bank because the National Bank Act, providing for a ratable distribution of the assets of an insolvent national bank, constitutes a complete code of laws covering the dissolution of national banks and the manner of payment of their debts.

The question of the right of priority in payment of claims against a bankrupt estate is covered by section 64b of the Bankruptcy Act, as amended (11 USCA § 104 (b), which, so far as here pertinent, provides as follows: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (7) debts owing to any person who by the laws of the States or the United States is entitled to priority: Provided, That the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States."

■ It is contended that this section of the Bankruptcy Act preserves the city's right as a sovereign to priority in payment of its debt in the provision that "debts owing to any person who by the laws of the States or the United States is entitled to priority." It is observed that the statute defines the scope to be given to the term "person," it being provided that it shall include "corporations, the United States and the several States and Territories of the United States." It makes no mention of municipalities, counties, or other subdivisions of the government, and, hence, we think they are necessarily excluded.

In Davis v. Pringle, 268 U. S. 315, 45 S. Ct. 549, 550, 69 L. Ed. 974, the court considered a contention that the United States had a right to priority in payment of claims arising out of the federal control of railroads. The matter arose in connection with claims against a bankrupt estate. As section 64b then stood, it did not specifically name the United States. In the course of the opinion by Justice Holmes it is, among other things, said: "It may be assumed that the priority must be found if at all in the Bankruptcy Act and in its supposed incorporation of Rev. St. § 3466 [31 USCA § 191]. That Act, as was said in Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 160, 32 S. Ct. 457, 460, 56 L. Ed. 706, 'takes into consideration * * * the whole range of indebtedness of the bankrupt, national, state and individual, and assigns the order of payment.' It was passed with the United States in the mind of Congress as is shown by the exception of debts due as taxes levied by the United States from the discharge in section 17a (1) [11 USCA § 35], the limitation on debts owing to the United

States as a penalty in section 57j [11 USCA § 93], and the provisions as to priority in section 64 [11 USCA § 104] with which we are principally concerned. By a of that section—'The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States * * * in advance of the payment of dividends to creditors.' This taken by itself would seem to exclude other debts. But the section goes on in b to give priority in the order named to '(5) debts owing to any person who by the laws of the States or the United States is entitled to priority,' and the Government argues that by section 1 (19) [11 USCA § 1] 'persons' shall include corporations and that the United States is a corporation and therefore within these words. Being within them, it is said, it is entitled to priority by a law of the United States, the well known Rev. St. § 3466. It is said that no other person except the United States itself can be discovered who is given the right by its laws."

The court held that to extend the definition of "persons" to include the United States would be inconsistent with the context, and denied the claim of priority, even though by specific general statute the right of priority was given.

■ If, in the instant case, it be conceded that the city as a sovereign had the prerogative right of priority of payment of its claims, yet in so far as such claims are urged against a bankrupt estate, the priority will not be recognized unless within the provisions of the bankruptcy law which specifically provides for a priority.

In Fiman v. State of South Dakota, supra, we said: "The National Bank Act (12 USCA §§ 21–200) provides for a ratable distribution of the assets of an insolvent national bank, constitutes a complete code of laws for the organization, control, and dissolution of national banks and the manner of payment of their debts, and even a federal statute, general in nature, providing for prior payments of debts due the United States is not effective as against its provisions."

■ The asserted right of priority of payment is not a lien that attached to the property any more than the right of the United States to priority given it by Revised Statutes, § 3466 (31 USCA § 191), considered by the Supreme Court in Davis v. Pringle, supra, is such a lien, and the right of priority in payment of claims against a bankrupt estate, other than those based upon specific liens, must be found in the Bankruptcy Act.

We conclude that there was no right to priority of payment of the city's claim, and the judgment appealed from is therefore modified to the extent of disallowing any part of the city's claim as a prior claim, and, as so modified, the judgment appealed from is affirmed.