### HANNA v. CONSOLIDATED SCHOOL DIST. NO. I OF HENRY COUNTY, MO. *
### No. 10235.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1935.

*Rehearing denied Aug. 26, 1935.

Haysler A. Poague, of Clinton, Mo., for appellant.

V. E. Phillips, of Kansas City, Mo., and W. E. Owen, of Clinton, Mo., for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a decree awarding the Consolidated School District a preferred lien in the sum of $530 against the assets of the Clinton National Bank of Clinton, Mo., insolvent.

The facts are undisputed. In about the year 1915, the school district issued its bonds for building purposes in the sum of $50,000 in denominations of $500 each, the bonds being callable after five years. All of the bonds were duly called and paid, except that the holder of bond No. 10 never presented it for payment. By its terms, the bond was made payable at the Clinton National Bank and the school district, having no funds at that bank to meet payment, decided, on advice of counsel, to place enough money in the Clinton Bank to cover the bond and the interest accrued thereon up to the time when the running of interest had been stopped by the call duly made. Accordingly, it drew two warrants upon its funds in another bank, one for the $500 principal of the bond and the other for the accrued interest ($30), and placed the warrants with the Clinton Bank. The Clinton Bank accepted the warrants and issued a deposit slip headed "Escrow Deposit Special," which recited, "Payment of Bond #10 Con Dist #1 Henry Co. Mo and Int on said bond for year ending Jan 27, 1921, said bond having been called at that date." Upon its ledger the bank set up this account under date of February 7, 1925:

"Escrow Account Special 2/7/25....$530."

The two warrants so deposited by the school district were forwarded by the Clinton Bank to its correspondent, the First National Bank at St. Louis, which collected them and gave credit on its books to the Clinton Bank for the amount. The bond No. 10 intended to be retired was never presented to the Clinton National Bank for payment and the "Escrow Account Special, $530" always remained intact.

On January 24, 1931, the Clinton National Bank was closed and a receiver was appointed, who was succeeded in the office by this appellant. When the bank closed, it had in its vaults actual cash amounting to $5,966.81 and cash items sufficient to make a cash showing on said date of $10,686.42, and continuously since the escrow deposit special was created it had cash in its vaults in excess of $530. Its account in the First National Bank at St. Louis, to which the two warrants were forwarded, had been overdrawn on occasions after the receipt of the warrants and on the day the Clinton Bank closed its credit balance with the First National Bank of St. Louis was $49.63. Its overdraft with its Kansas City correspondent was $745.07 and the total of the deposits in all other correspondent banks was $305.74.

The trial court found that the school district's deposit of warrants was made by the school district and received by the Clinton Bank as a special escrow deposit for the payment of bond No. 10; and that the deposit augmented the assets of the

Clinton National Bank in the amount of $530; and it concluded that funds in that amount, including said deposit, came into the hands of the bank's receiver for which the school district was entitled to a preference.

The appellant, by appropriate assignments of error, presents: (1) That the school district did not sustain the burden upon it to prove an agreement to create a special trust deposit; and (2) that the fund represented by the school district's warrants was not traced into the receiver's hands, but was dissipated when the credit balance in the St. Louis bank, to which they had been applied, was overdrawn.

■ One seeking to impress a trust upon the assets of an insolvent national bank must first establish the existence of a fiduciary relationship in connection with the transaction that gives rise to the claim. Kershaw v. Jenkins (C. C. A. 10) 71 F.(2d) 647, 649; City of Lincoln, et al. v. L. A. Ricketts (C. C. A. 8) 77 F.(2d) 425, April 27, 1935. If the fund is deposited with the bank for a specific purpose under circumstances that negative an intent that title to the money passes to the bank, the bank becomes the agent of the depositor, subject to all the obligations flowing from that relation. Northern Sugar Corp. v. Thompson (C. C. A. 8) 13 F.(2d) 829; Thompson v. Beitia (C. C. A. 10) 69 F.(2d) 356; Kershaw v. Kimble (C. C. A. 10) 65 F. (2d) 553; Kershaw v. Jenkins (C. C. A. 10) 71 F.(2d) 647; Pitts v. Pease (C. C. A. 5) 39 F.(2d) 14; Genesee Wesleyan Seminary v. United States F. & G. Co., 247 N. Y. 52, 159 N. E. 720, 56 A. L. R. 964; Jennings v. United States F. & G. Co., 294 U. S. 216, 55 S. Ct. 394, 79 L. Ed. 869 (1935).

■ In the instant case the deposit was made for the express purpose of retiring a definite outstanding obligation of the school district. The deposit stood, not in the name of the depositor, but in an account designated "Escrow Deposit Special," and the deposit slip issued recited on its face the special object for which the account was created. As the school district's bond was payable at the Clinton Bank and its presentation for payment at the bank was in contemplation of the parties, the form of the deposit slip issued to the school district and the entries the bank made on its own books clearly indicate the mutual intention that the bank should pay the bondholder when he presented the bond. Then it would hold the identical bond for delivery to the school district. Until then it would maintain the identity of the fund in the special escrow deposit. Such is the significance of the use of the word "escrow." Plainly the bank became the agent or bailee of the school district with definite obligations imposed on it in handling and applying the fund, and the trial court is sustained in so holding.

Under such circumstances, equity will impose a trust on the fund and order its restoration prior to payment of the claims of general creditors, if there is satisfactory proof that the property or its proceeds went into a specific fund now in the possession of the receiver. Blumenfeld v. Union Nat. Bank (C. C. A. 10) 38 F.(2d) 455, 457; Fiman v. State of So. Dak. (C. C. A. 8) 29 F.(2d) 776, 779; Larabee Flour Mills v. First Nat. Bank (C. C. A. 8) 13 F. (2d) 330, certiorari denied 273 U. S. 727, 47 S. Ct. 238, 71 L. Ed. 861; Kershaw v. Jenkins, supra; Empire State Surety Co. v. Carroll County (C. C. A. 8) 194 F. 593, 603; Kershaw v. Kimble, supra; Connolly v. Lang (C. C. A. 7) 68 F.(2d) 199; Edisto Nat. Bank v. Bryant (C. C. A. 7) 72 F.(2d) 917.

■ 2. The crux of the case is whether the fund was traced into the receiver's hands. All that the Clinton Bank received from the school district was its two warrants which it sent to its St. Louis correspondent. All that it got from the St. Louis correspondent was a credit augmenting a credit balance on the books of the correspondent. The credit balance was exhausted by overdraft. The fund now in the hands of the receiver is made up of the cash and cash items he finds in the vaults of the Clinton Bank. Can it be said that any of the school district's fund has been traced into it? The question is old in this circuit. Empire State Surety Co. v. Carroll, supra; State Bank v. Alva Secur. Bank (C. C. A. 8) 232 F. 847; Macy v. Roedenbeck (C. C. A. 8) 227 F. 346, L. R. A. 1916C, 12; Fiman v. State of So. Dak., supra; Larabee Flour Mills v. First Nat. Bank, supra; Farmers' Nat. Bank v. Pribble (C. C. A. 8) 15 F.(2d) 175; Mechanics' & Metals Nat. Bank v. Buchanan (C. C. A. 8) 12 F.(2d) 891; Dudley v. Richards (C. C. A. 8) 18 F. (2d) 876; People's Nat. Bank v. Moore (C. C. A. 8) 25 F.(2d) 599; Cuttell v. Fluent (C. C. A. 8) 51 F.(2d) 974; Hirning v. Federal Reserve Bank (C. C. A. 8) 52 F. (2d) 382.

In Empire State Surety Co. v. Carroll County, supra, Judge Walter H. Sanborn, speaking for this court, said:

"This is a suit in equity against the receiver of a national bank to require him to take from the ratable dividends of other creditors of the bank the requisite amount to pay the county's claim in full. The receiver must make the distribution of the property of this bank in accordance with the provisions of the national banking law. It is the dominant purpose and requirement of that law that, after provision for a redemption of its notes is made, the proceeds of an insolvent national bank shall be equally distributed among its unsecured creditors. So imperative is this provision that it repeals a former act of Congress giving a preference to the United States and annuls a statute of a state giving a preference to deposits of savings banks. Rev. St. § 5236 (U. S. Comp. St. 1901, p. 3508 [12 USCA § 194]); Davis v. Elmira Savings Bank, 161 U. S. 275, 285, 16 S. Ct. 502, 40 L. Ed. 700; First National Bank v. Colby, 21 Wall. 609, 613, 614, 22 L. Ed. 687. The burden, therefore, is on the sureties to prove clearly that they are entitled on equitable principles to the preference they seek. They proved that the bank took the deposits of the county and of its other depositors in trust for them respectively. But this was not enough. They were also required to prove that these deposits or their proceeds, or a certain part of them, came to the hands of the receiver, for he is liable to cestuis que trustent to pay trust funds in full only to the extent that he receives them. * * *

"It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver. * * *

"Proof that a trustee mingled trust funds with his own and made payments out of the common fund is a sufficient identification of the remainder of that fund coming to the hands of the receiver."

Preference was denied in that case and has been consistently denied in every case presented to this court where the claimant was unable, as it is here, to trace its fund into the fund held by the receiver.

In Fiman v. State of So. Dakota, supra, this court gave particular consideration to a claim for preference where it was shown that trust funds went into credit balances on the books of correspondents of the failed bank. A number of such balances were analyzed and in every instance the limit of preferred recovery was "the smallest amount the fund contained subsequent to the commingling." Because the rule had not been adhered to in one instance, the trial court's decree was modified so as to conform.

An exactly analogous question to that presented here was given some consideration by the Circuit Court of Appeals in the Tenth Circuit in Blumenfeld v. Union Nat. Bank, supra. There a trust fund was turned into the assets of a failed bank "augmenting them to the extent of $8,000." After the trial court had denied a preference on account of the failure to trace—always deemed fatal in this circuit—it entertained a petition for rehearing and there was an intimation that the fund had been deposited by the failed bank in a correspondent bank at Kansas City. The court said:

"There is an intimation in the opinion of the court below that at the hearing, in answer to an inquiry, the receiver stated the fund in question was deposited in the Kansas City bank. But the fact does not appear in the evidence brought to this court, and is not entitled to consideration. However, if we assume the fact and the further fact that the Beloit bank, on its failure, had the balance in that correspondent bank, there is no showing that the latter had not disbursed the fund or that appellant would be able to show it had not done so. It is therefore immaterial what the balance was in that bank at the date of the receivership. * * *"

The diligence of counsel has not disclosed any case in the Eighth Circuit where this court has deviated from its invariable rule that the claimed trust fund must be clearly proven to have gone into the fund in the receiver's hands before preference will be awarded.

We think it equally clear that in so adhering, this court has conformed to the mandate of the Supreme Court decisions. Texas & Pacific R. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; Central Nat. Bank v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, 68, 26 L. Ed. 693; Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873; St. Louis & S. F. R. Co. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060.

The most recent expression is by Justice Brandeis, speaking for the court in Texas & Pacific R. Co. v. Pottorff, supra. Discussing the principles upon which preference over general creditors could be conferred in special circumstances, it is said (footnote 19, at page 261 of 291 U. S., at page 420 of 54 S. Ct., 78 L. Ed. 777):

"The claimant has the burden of identifying the property in its original or altered form. Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806. It is not enough to show that at the time of receipt the general assets of the insolvent were increased or that debts were discharged. Wuerpel v. Commercial Germania Bank (C. C. A.) 238 F. 269, 272, 273; Knauth v. Knight (C. C. A.) 255 F. 677; State Bank of Winfield v. Alva Security Bank (C. C. A.) 232 F. 847; In re See (C. C. A.) 209 F. 172; In re Dorr (C. C. A.) 196 F. 292; City Bank v. Blackmore (C. C. A.) 75 F. 771; compare St. Louis & S. F. R. Co. v. Spiller, 274 U. S. 304, 311, 47 S. Ct. 635, 71 L. Ed. 1060; Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873."

In the case of Schuyler v. Littlefield, supra, the second syllabus reads:

"One seeking to charge a fund in the hands of a trustee for the benefit of all creditors as being the proceeds of his property and therefore a special trust fund for him, has the burden of proof; and if he is unable to identify the fund as representing the proceeds of his property, his claim must fail as all doubt must be resolved in favor of the trustee who represents all creditors."

In 1931 the Circuit Court of Appeals of the Fourth Circuit decided that where a bank received a check from a widow to buy a bond which it never bought but forwarded the check to a correspondent bank for deposit, failing after such deposit account had been dissipated by overdraft, the widow could recover a preference upon the other assets that came into the hands of the receiver. Schumacher v. Harriett (C. C. A. 4) 52 F.(2d) 817, 819. The court said that the doctrine of tracing trust funds had been greatly liberalized in recent years, and the decision was rested on the proposition that the insurance company check which the widow deposited in the bank was a cash item and that "for all practical purposes differs not at all from currency." Accordingly, it held that the check should be treated as though it had been cash in determining whether the cash remaining in the bank was subject to a trust. In Pottorff v. Key, 67 F.(2d) 833, the Circuit Court of Appeals in the Fifth Circuit expressly refused to apply the principles announced in Schumacher v. Harriett, supra. And in Wisdom v. Keen, 69 F.(2d) 349, the same court again voiced disapproval of such a doctrine in tracing trust funds. In Adams v. Champion (C. C. A. 7) 70 F.(2d) 956, the opinion in the Schumacher Case is quoted with approval and followed on the question of tracing a trust fund. This case was reversed on appeal to the Supreme Court in Adams v. Champion, 294 U. S. 231, 55 S. Ct. 399, 79 L. Ed. 880, upon the ground that no trust relationship had been established. In National Bank v. United States F. & G. Co. (C. C. A. 7) 71 F.(2d) 618, the Schumacher Case was again cited with approval. Upon appeal (Jennings v. United States F. & G. Co., 294 U. S. 216, 55 S. Ct. 394, 79 L. Ed. 869) that case was reversed, the court holding that where the proceeds derived from the collection of a check are used by the collecting agent to offset an adverse balance against it in clearing operations, the trust res had been dissipated. In neither case did the Supreme Court take occasion to comment upon the particular doctrine of Schumacher v. Harriett, supra.

Ultimately the doctrine of Schumacher v. Harriett, supra, must be rested upon the fiction that a check that was received and forwarded elsewhere was cash in the bank. But we are not persuaded that we should resort to such a fiction to upset equality of distribution, which, in the main, is equitable.

We think the school district was not entitled to a preferred claim.

Reversed and remanded with instructions to allow a general claim only.

BOOTH, Circuit Judge.

I concur in the foregoing opinion solely because of the doctrine of stare decisis.