CONVERSE RUBBER CO. v. BOSTON–CONTINENTAL NAT. BANK et al.

No. 3682.

District Court, D. Massachusetts.

Nov. 20, 1935.

888

Harry E. Burroughs, John H. Blanchard, Benj. A. Levy, B. A. Brickley, and Brickley, Sears & Cole, all of Boston, Mass., for plaintiff.

Murray F. Hall, Goodwin, Proctor & Hoar, Herrick, Smith, Donald & Farley, and Noel Morss, all of Boston, Mass., for defendants.

BREWSTER, District Judge.

This suit in equity was originally brought against the Boston-Continental National Bank and its receiver.

The matter is before the court upon an amended bill of complaint, in which the Federal Reserve Bank is joined as a party defendant.

Plaintiff seeks to establish a trust upon the assets in the hands of the receiver in the amount of $50,000 with accrued interest, and prays for a decree declaring that the Federal Reserve Bank holds the said amount for the benefit of the plaintiff, and that it be ordered to pay it over to the plaintiff.

### Statement of Facts.

1. The plaintiff is a Massachusetts corporation. A holder of a substantial amount of the stock of the corporation secured a loan from the Boston-Continental National Bank (hereinafter referred to as the Continental Bank). One of the inducements for the loan was the promise by the borrower that she would cause the plaintiff to carry a substantial deposit in the Continental Bank.

2. On December 12, 1931, the plaintiff had a deposit in the Continental Bank of $67,999. The officers of the plaintiff, having reason to believe that the Continental Bank was not in a good financial condition, thought it advisable to transfer a portion of the deposit to the First National Bank of Boston. Accordingly, the plaintiff drew its check, dated December 12, 1931, payable to the order of the First National Bank, for $50,000. On December 15 the plaintiff deposited the check in the First National Bank. On December 16, 1931, at 8:57 o'clock a. m. this check, in accordance with the usual practice of that bank, together with others drawn on the Continental Bank aggregating $169,-541.00, was sent for collection to the Federal Reserve Bank (hereinafter referred to as the Reserve Bank). When the checks were received by the Reserve Bank from the First National Bank, the Reserve Bank credited that bank with the sum of $169,541, and debited the reserve account of the Continental Bank in the same amount. Before 9:15 a. m. the Reserve Bank delivered all of the said checks, including plaintiff's, to a representative of the Continental Bank.

Some time between 12 m. and 1 o'clock p. m. on December 16, the Reserve Bank received from the Continental Bank the plaintiff's check, attached to which was a printed slip indicating that the check had been recalled by plaintiff.

Upon receipt of the check and slip and a credit memorandum for $50,000, the Reserve Bank sent the check and slip to the First National Bank and received from it in exchange therefor the First National Bank's duebill which, in due course, was sent to the Boston Clearing House, and on December 17 collected. After the duebill had been collected, the reserve account of the Continental Bank was credited with the sum of $50,000. No further action relative to the checks was taken by the Reserve Bank.

When the First National Bank received the plaintiff's check from the Reserve Bank, it in due course sent the same to the plaintiff accompanied by a statement showing that the plaintiff's account had been debited for the amount of the check.

3. The Reserve Bank received the check from the First National Bank subject to the terms and conditions of a cir-

cular letter issued pursuant to regulations of the Federal Reserve Board promulgated under statutory authority. The regulations and circular letter provided that the Reserve Bank acted only as agent of the bank from which it received checks, and assumed no liability except for its own negligence and its guaranty of prior endorsements. The regulations also provided that the Reserve Bank should give immediate credit for items drawn on Boston banks, which included the First National Bank.

Subparagraph 7 of section 2 of the terms and conditions set out in the circular letter, above referred to, provided that: "The amount of · any check for which payment in actually and finally collected funds is not received shall be charged back to the forwarding bank regardless of whether or not the check itself can be returned. In such event neither the owner or holder of any such check * * * shall have any right of recourse upon, interest in, or right of payment from, any reserve balance, clearing account, deposit account or such other funds of the drawee bank in the possession of the Federal Reserve Bank."

4. The Continental Bank was not a member of the Boston Clearing House, but there existed an agreement between it and the Reserve Bank which governed the collection of checks by the latter, drawn on the former. Under this agreement the Reserve Bank provisionally charged such checks to the Continental Bank before delivery, but the Continental Bank had the unconditional right to return any check before 1:30 o'clock p. m. of the same day and receive credit for its amount with the same effect as if it had refused payment over its counter.

5. One of the disputed issues of fact was whether the plaintiff had recalled the check. On this issue I find that when the check was received at the Continental Bank, it was taken to the president, who communicated with an attorney for the stockholder to whom the loan had been made by the bank. The president, after telephone conversations, stated to the teller that the check had been recalled. I find that no one having authority in the premises ever authorized or consented to its withdrawal, or gave the president any reason to believe that the plaintiff would assent to the recall. The act of the bank president in returning the check to the Reserve Bank was wholly without sanction or justification.

6. It appears from the records of the Continental Bank that on December 16 the plaintiff had a balance of $74,499.12. On the same day the account was charged with $50,000 and credited with $50,000. No change in the balance resulting from these transactions was recorded. The two entries were made at the same time and were made after the president had stated to the head bookkeeper that the check had been recalled. The bookkeeper testified that he had given instructions for these entries merely to have a record that the check had been received by the bank.

7. At the opening of business on December 16, 1931, the Reserve Bank had on hand a credit in favor of the Continental Bank in the sum of approximately $259,000, called the "reserve account." This account was subject to withdrawals by the Continental Bank, and about 2:58 o'clock p. m. on December 16, this account had been overdrawn approximately $22,000, and this was after the Reserve Bank had credited the account with the $50,000 check. It also had on hand items for collection amounting to approximately $245,000. At the close of business on December 16, 1931, items in process of collection by the Reserve Bank amounted to approximately $179,000. At the same time, the Federal Reserve Bank was carrying loans for the Continental Bank in a sum of slightly over $1,000,000, with collateral having a face value at the time of approximately $1,055,-000.

8. On December 17, 1931, the Comptroller of Currency took possession of the Continental Bank, and on December 22, 1931, a receiver was appointed. On April 22, 1932, the balance in the reserve account was applied to the reduction of the indebtedness due from the Continental Bank. This application was authorized. On August 1, 1933, the indebtedness of the Continental Bank having been fully satisfied, the Reserve Bank returned to the Continental Bank the sum of $5,721 in cash and collateral having a face value at the time of $453,948.76. At this time the Reserve Bank' attached a condition that the collateral returned should be held in trust pending the outcome of equitable proceedings then pending which were later dismissed; and on February 2, 1935, the Reserve Bank authorized the receiver to release the trust as to all of said assets.

9. The proceedings here were begun by bill in equity filed in the state court on May 2, 1932, and the amendment introducing the Reserve Bank as a party defendant was not filed until March 31, 1935. In December, 1932, the First National Bank requested the Federal Reserve Bank to give information to plaintiff regarding this transaction. This was done, and the Reserve Bank heard nothing further until it was served with a subpœna in March, 1935.

### Conclusions of Law.

The amended bill in equity has a twofold purpose: (1) The plaintiff seeks to recover from the Reserve Bank the amount of the $50,000 check which it received for collection from the First National Bank; and (2) failing that, the plaintiff, as a depositor, invokes the aid of the equity court in the establishment of a preferred status for its claim of $50,000.

The bill must be dismissed as to the Reserve Bank for several reasons.

■ First: The facts disclosed by the evidence are not sufficient to impose any liability upon the Reserve Bank. That bank received the item for collection upon the terms of the circular which it had issued. These regulations provided that the bank acted only as agent for the forwarding bank and was liable only for its own negligence and, further, that any check not actually and finally paid could be charged back to the forwarding bank. The check in question was not paid in "actually and finally" collected funds. Under the terms of the agreement according to which the Continental Bank and the Reserve Bank dealt, the former had an unconditional right to return any check drawn upon it and to receive a credit on its reserve account in the Reserve Bank. These regulations govern the rights of the bank. Early v. Federal Reserve Bank, 281 U.S. 84, 50 S.Ct. 235, 74 L.Ed. 718.

The debit of the check to the reserve account of the Continental Bank was provisional only. Under these circumstances, the Reserve Bank, as holder of the check, had acquired no rights against the Continental Bank. National Bank of the Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897; Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157, 30 A.L.R. 635.

The acceptance of the drawee bank must be unequivocal and made the basis of a settlement with the drawer. National Bank of the Republic v. Millard, supra; Early v. Federal Reserve Bank, supra; In re Smith, Lockhart & Co. (D.C.) 3 F.(2d) 444; Columbia-Knickerbocker Trust Co. v. Miller, 215 N.Y. 191, 109 N.E. 179, Ann.Cas. 1917A, 348.

Since the check was not, in fact, collected and the Reserve Bank had acquired no rights to have it paid, it is difficult to see how that bank could be held accountable to the plaintiff, or to any one else, for the amount of it. There is no merit in the argument that the Reserve Bank was negligent. It would be stating a novel proposition of law to hold that a forwarding bank was under a duty to inquire into the legality of all refusals of a drawee bank to honor checks drawn upon it.

■ Second: If we should assume, however, that the plaintiff had any rights against the Reserve Bank, its remedy at law would be entirely adequate.

■ And, thirdly. It was not until March, 1935, nearly four years after the transaction took place, that the Reserve Bank had any intimation that the plaintiff was asserting a claim upon it based upon its action respecting the $50,000 check. In the meantime, the Reserve Bank had settled with the Continental Bank, had relinquished all claims upon assets which it could have retained had it known that the plaintiff was making any claim upon it. Clearly, this is a case where whatever rights the plaintiff may have had have been lost by its failure to diligently prosecute them.

■ Plaintiff's suit against the receiver of the Continental Bank presents another instance of an attempt by a depositor to secure a preference in the payment of his claim over the claim of other depositors. In order to succeed, it is necessary (1) to establish the existence of a fiduciary relationship; (2) to prove that the assets of the bank have been augmented by the transaction; and (3) to trace the res into the hands of the receiver. Colorado Milling & Elevator Co. v. Cunningham (D. C.) 7 F.Supp. 965; Kershaw v. Jenkins (C.C.A.) 71 F.(2d) 647, 649; City of Lincoln, Neb., v. Ricketts (C.C.A.) 77 F.(2d) 425; Hanna v. Consolidated School Dist. No. 1 of Henry County, Mo. (C.C.A.) 78 F.(2d) 374.

■ The first question presented is whether the relation of trustee and beneficiary can be found to exist on the facts of the

case. Plaintiff's deposit in the Continental Bank was a general deposit, and the relationship arising therefrom was that of debtor and creditor. National Bank of the Republic v. Millard, 10 Wall. 152, 155, 19 L. Ed. 897; Planters' Bank v. Union Bank, 16 Wall. 483, 501, 21 L.Ed. 473; Phœnix Bank v. Risley, 111 U.S. 125, 4 S.Ct. 322, 28 L.Ed. 374; Manhattan Co. v. Blake, 148 U.S. 412, 13 S.Ct. 640, 37 L.Ed. 504; Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Atlantic Gypsum Co. v. Federal National Bank of Boston (C.C.A.) 76 F.(2d) 59.

In the Millard Case, the court observed:

"The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it."

It is necessary, therefore, to inquire whether there is anything in the case that warrants the conclusion that the debtor-creditor relationship was transformed into a fiduciary relationship. The check drawn on the Continental Bank and returned unpaid was, in legal effect, a demand upon the bank for $50,000 of the deposit. The depositor by demanding his deposit cannot change what was merely a debt of the bank into a fund held in trust, and this even if the demand is wrongfully refused. Swan v. Children's Home Soc. of West Virginia (C.C.A.) 67 F.(2d) 84, 87.

In that case the court said:

"If it be assumed that the right to the deposit was in plaintiff and that the bank wrongfully refused to pay same over upon demand, this would be a mere breach of contract which would change not at all the character of the deposit."

Nor will the wrongful application or a fraudulent failure to carry out instructions with respect to a general deposit work any transmutation in the character of the deposit. Blakey v. Brinson, supra; City of Lincoln, Neb., v. Ricketts, supra; Swan v. Children's Home Soc. of West Virginia, supra; McNair v. Oesterreicher (C.C.A.) 63 F.(2d) 876; Williams Co. v. Broward Bank & Trust Co. (C.C.A.) 69 F.(2d) 14; Kershaw v. Kimble (C.C.A.) 65 F.(2d) 553.

The refusal of the bank to accept and pay the check amounted to no more than a breach of its contract with the plaintiff. While the act of the president was unauthorized and constituted a wrong, it is doubtful whether the act could be said to be fraudulent in the sense that it would support an action for deceit. The representation that the check had been recalled was false, but the plaintiff did not act upon that misrepresentation. It has even been held that, where the bank received funds under a definite agreement to hold them in trust, and failed to do so, no constructive trust arises from the failure. Wisdom v. Keen (C.C.A.) 69 F.(2d) 349.

If, however, the special circumstances of misconduct were sufficient to create a constructive trust, there can be no preferred claim without an identifiable res upon which the trust may be impressed. Texas & P. R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; Jennings, Rec'r, v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 397, 79 L.Ed. 869, 99 A.L.R. 1248.

There can be no identifiable res unless the transactions result in an augmentation of the assets of the bank. Mark v. Westlin (D.C.) 48 F.(2d) 609; Spradlin v. Royal Mfg. Co. (C.C.A.) 73 F.(2d) 776; Larabee Flour Mills v. First National Bank of Henryetta (C.C.A.) 13 F.(2d) 330.

In some jurisdictions it is thought that it is not necessary to show augmentation in the sense of bringing money into the bank from the outside. First National Bank of St. Petersburg v. City of Miami (C.C.A.) 69 F.(2d) 346.

But it seems to be the universal rule that there either must be such an accretion from the outside or an actual setting apart, or segregation, of the funds of the bank so that at some time there will be an identifiable fund to which a trust could attach and which can be traced to the receiver. Wisdom v. Keen, supra.

I can see no merit in the plaintiff's contention that the Continental Bank, by charging the $50,000 to the plaintiff's account, accepted the check and thereby segregated that amount from the other funds of the bank. There was actually no physical setting apart of the amount of the check. There was merely a book entry shifting the liability from the depositor to the Reserve Bank. The simultaneous entry of a credit for the same amount would seem to negative the idea of any intention on the part of the bank to set apart the

$50,000 in trust for the use and benefit of the plaintiff, but if only the debit entry had been made, it could not be ruled, in the light of the decisions, that the mere entry with nothing more would operate to segregate the amount of the check.

■ A transaction, even though wrongful, which results only in the reduction of the bank's liability, does not meet the requirements of the rule for augmentation. Blakey v. Brinson, supra; Jennings v. United States Fidelity & Guaranty Co., supra.

In the course of the opinion in the Jennings Case, Mr. Justice Cardozo made this observation:

"Currency paid over the counter and deposited in a vault is a thing that can be identified and so subjected to a trust whenever in equity and conscience a trust should be implied. Not only that, but a trust so created will not fail though other dollars may have taken the place of those originally received, for dollars are fungibles and any one of them will be accepted as a substitute for another. [Citation.] But the situation is very different when what has been received by the collecting agent is not a thing at all, but a reduction of liabilities by set off or release. [Citations.] A debt does not furnish a continuum upon which a trust can be imposed after cancellation or extinguishment has put the debt out of existence."

The mere shifting of credits or the substitution of one debtor for another does not result in any augmentation. Lifsey v. Goodyear Tire & Rubber Co. (C.C.A.) 67 F.(2d) 82; Larabee Flour Mills v. First National Bank of Henryetta, supra; Old Company's Lehigh v. Meeker, 294 U.S. 227, 55 S.Ct. 392, 79 L.Ed. 876.

■ It is the plaintiff's contention that where a bank refuses, without cause, to pay a check drawn upon it by a depositor, when at the time of presentation for payment the depositor's account was sufficient to cover the check, the wrongful refusal of the bank to honor the check gives rise to a trust in the funds of the bank, thus entitling the depositor to priority over the other depositors. Plaintiff cites four Missouri cases: Bank of Poplar Bluff v. Millspaugh (1926) 313 Mo. 412, 281 S.W. 733, 47 A.L.R. 754; Claxton v. Cantley (Mo.App.1927) 297 S.W. 975, 977, Johnson v. Farmers' Bank (1928) 223 Mo.App.

513, 11 S.W.(2d) 1090; Hiatt v. Miller Bank (1931) 224 Mo.App. 1040, 34 S.W. (2d) 532.

It is difficult for me to understand how the Millspaugh Case lends support to the plaintiff's contention. That case dealt, not with the rights of a depositor, but with the rights of a forwarding bank against the collecting bank which was the drawee of the draft involved. The draft had been accepted by the drawee, but before it had been paid the drawee bank failed. The court held that the relationship of principal and agent existed even after collection, with the result that the bank held the proceeds of the draft prior to remittance as trustee. The debtor-creditor relation between a bank and its depositors is expressly recognized in the opinion of the court; furthermore, it is extremely doubtful whether the rule of this case, respecting the continued relationship of principal and agent after collection, would obtain in the federal courts. Commercial Nat. Bank of Pennsylvania v. Armstrong, 148 U.S. 50, 13 S.Ct. 533, 37 L.Ed. 363; Jennings, Rec'r, v. United States Fidelity & Guaranty Co., supra.

In the Jennings Case the court said:

"In the absence of tokens of a contrary intention, the better doctrine is, where the common law prevails, that the agency of the collecting bank is brought to an end by the collection of the paper, the bank from then on being in the position of a debtor, with liberty, like debtors generally, to use the proceeds as its own."

The great weight of authority is against a trust relationship if the draft received for collection is paid by a check drawn upon deposits in the bank making the collection; the reason being that the mere shifting of credits on the books of the bank, or a substitution of one debtor for another, did not operate to augment the assets of the bank. Old Company's Lehigh v. Meeker, supra; Larabee Flour Mills v. First National Bank of Henryetta, supra; Lifsey v. Goodyear Tire & Rubber Co., supra; Spradlin v. Royal Manufacturing Co., supra; compare Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288; Mark v. Westlin, supra.

The other Missouri cases, cited by plaintiff, involve the rights of a depositor whose check had been dishonored, and are more nearly in point to the case at bar.

These cases apparently go upon the doctrine that the wrongful act of the bank in refusing to pay the check was tantamount to an augmentation of the assets of the bank or, as stated by the court in Claxton v. Cantley, supra:

"The legal effect, therefore, of the wrongful act of the bank in refusing to pay the check was to swell the assets of the bank at the time of its closing in the same amount."

This is merely another way of stating that the reduction of liabilities of a bank to its depositor is, in legal effect, an augmentation of the bank's assets. It is impossible to reconcile this doctrine with the cases above cited which must control in this court.

Furthermore, it must be borne in mind that we are concerned with the alleged preferred right upon assets of a national banking association in the process of liquidation under the statutes of the United States, which provides for a ratable distribution among all creditors. It has been said that in such a case the issue is not between the depositor and the bank, but between the claimants and the general creditors of the bank. Larabee Flour Mills v. First National Bank of Henryetta, supra. See, also, Wisdom v. Keen, supra.

It is a well-recognized rule that when one is endeavoring to obtain preferential treatment in the distribution of the assets of a bank, which has failed, by impressing a trust upon funds in the hands of a receiver, he has a heavy burden of proof, and unless he clearly and certainly identifies the fund he must fail. Schuyler v. Littlefield, Trustee, 232 U.S. 707, 34 S. Ct. 466, 58 L.Ed. 806; Wisdom v. Keen, supra; First Nat. Bank of St. Petersburg v. City of Miami, supra.

In view of the foregoing I have reached the conclusion that the plaintiff has not established its right to have its claim allowed as preferred.

A decree may be entered dismissing the plaintiff's bill of complaint as against the defendant Federal Reserve Bank.

Inasmuch as the plaintiff was a depositor, I am assuming that it has already proved, or will have no difficulty in proving, its claim against the receiver, and for that reason a decree may be entered dismissing the bill as to the receiver. and the bank, without prejudice to the rights of the plaintiff to participate as a general creditor in the distribution of the assets of the Continental Bank.